Bill CANNON, Appellant,

v.

ICO TUBULAR SERVICES, INC., formerly known as Baker Hughes Tubular Services, Inc., a/k/a Baker Tubular Services, Inc., Appellee.

No. 01–94–00361–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 10, 1995.

Rehearing Overruled Sept. 7, 1995.

382 

George M. Bishop, Houston, for appellant.

Russell E. Wilson, Fort Worth, for appellee.

Before HUTSON–DUNN, O'CONNOR and WILSON, JJ.

## OPINION ON MOTION FOR REHEARING

HUTSON–DUNN, Justice.

We withdraw our prior opinion and substitute the following in its place.

This is an appeal of a judgment notwithstanding the verdict entered by the trial court in favor of the appellee, ICO Tubular Services, Inc., ("ICO"), following a jury trial on a petition for bill of review filed by the appellant, Bill Cannon. After Cannon's employment with Baker Hughes Tubular Services, Inc. (now known as ICO), was terminated, he asserted a breach of contract action against Baker Hughes Tubular ("BHT"). Cannon's case against BHT was dismissed for want of prosecution. After ICO purchased BHT, Cannon filed a petition for bill of review against ICO claiming that neither he nor his attorneys had notice of either the trial court's intent to dismiss the case or the order of dismissal. Following a jury trial on Cannon's petition for bill of review in which a jury entered a verdict in his favor, Judge David West of the 269th District Court entered judgment notwithstanding the verdict in favor of ICO.

In two points of error, Cannon asserts that the trial court erred in granting ICO's motion for judgment notwithstanding the verdict because the evidence is legally sufficient to support the jury's verdict. In his first point, Cannon contends that the evidence is sufficient to support the jury's finding that his case met bill of review criteria, thereby entitling him to a trial on the merits of his breach of contract suit. In his second point, Cannon argues that he proved his breach of contract claim on the merits. ICO responds that the trial court properly granted judgment notwithstanding the verdict because there was no evidence to support the jury's verdict that Cannon satisfied bill of review criteria and proved his breach of contract claim on the merits. Alternatively, in three cross-points of error, ICO argues the following: (1) the evidence is factually insufficient to support the jury's verdict on Cannon's

petition for bill of review; (2) the evidence is factually insufficient to support a jury finding awarding Cannon severance pay; and (3) there is factually insufficient evidence that ICO was liable under the jury verdict. We reverse the judgment of the trial court and render judgment for Cannon on the jury's verdict; however, we reduce the amount of attorney's fees awarded to Cannon and remand this case to the trial court to determine the amount of interest to which Cannon is entitled.

## I. The Bill of Review Criteria

### A. Requirements to Obtain a Bill of Review

A bill of review is an equitable action brought by a party to a former action seeking to set aside a judgment that is not appealable or subject to a motion for new trial. *State v. 1985 Chevrolet Pickup Truck*, 778 S.W.2d 463, 464 (Tex.1989). Relief by equitable bill of review is available only if a party exercises due diligence to pursue all adequate legal remedies against a former judgment, and by no fault of his own, no adequate legal remedy is available. *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989); *Hesser v. Hesser*, 842 S.W.2d 759, 765 (Tex.App.—Houston [1st Dist.] 1992, writ denied). If legal remedies were available but ignored, the equitable remedy of a bill of review is not available. *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706, 711 (1961); *Hesser*, 842 S.W.2d at 765.

Rule 329b(f) of the Texas Rules of Civil Procedure states that, upon the expiration of the time within which the trial court has plenary power, the court cannot set aside its judgment except by a bill of review for sufficient cause filed within the time allowed by law. *Chevrolet Pickup Truck*, 778 S.W.2d at 464; Tex.R.Civ.P. 329b(f). The rule does not define "sufficient cause," but the Texas Supreme Court has judicially declared the steps required to obtain a bill of review proceeding. *Chevrolet Pickup Truck*, 778 S.W.2d at 464.

To obtain a reinstatement of the former action and a trial on the merits, the petitioner must file a petition that alleges factually and with particularity that: (1) the prior judgment was rendered because of fraud, accident or wrongful act of the opposite party, or official mistake; (2) unmixed with his own negligence.[1] *Id.; Baker v. Goldsmith*, 582 S.W.2d 404, 408 (Tex.1979). The petitioner must further state sworn facts sufficient to constitute a meritorious claim and present prima facie proof to support his contention. *Id.*[2]

If a prima facie case is shown, the court will conduct a trial at which the petitioner must open and prove by a preponder-

---

1. When the issue before the court is whether the prior judgment or order was rendered because of official mistake, some cases have held the petitioner to the less onerous burden of pleading and proving the elements he would have been required to address if he had timely filed a motion for new trial or motion to reinstate. *Hanks v. Rosser*, 378 S.W.2d 31, 35 (Tex.1964); *Rund v. Trans East, Inc.*, 824 S.W.2d 713, 717 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Such elements are: (1) the entry of the underlying judgment or order was not due to intentional conduct or the result of conscious indifference on the part of the party, but was due to mistake or accident; (2) the party has a meritorious claim or defense; and (3) granting a new trial will not result in delay or otherwise injure the other party. *See Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939); *Rund*, 824 S.W.2d at 717. We need not address the application of this standard to the facts of the present case. The trial court's first issue to the jury asked whether it found from a preponderance of the evidence that Cannon was prevented from prosecuting his claim by the accident or mistake of court officials *unmixed with any fault or negligence on his part or the part of his attorney.* Although Cannon requested an issue as to whether the jury found from a preponderance of the evidence that ICO's counsel acted fraudulently, the record shows that he did not request an instruction regarding whether the entry of the order dismissing his case for want of prosecution was due to his own mistake or accident. Therefore, we need not address whether the trial court erred by not submitting this issue to the jury. *See* Tex.R.Civ.P. 274; Tex.R.App.P. 52(a).

2. Due process requires that the meritorious claim or defense requirement for a petition bill of review and motion for new trial be excused when the judgment or order was rendered without proper notice. *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 86, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988); *Lopez v. Lopez*, 757 S.W.2d 721, 722–23 (Tex.1988). However, since Cannon obtained a trial on his petition for bill of review in the present case, we hold that he was not deprived of due process of law.

ance of the evidence that the order or judgment was rendered as the result of fraud, accident or wrongful act of the opposite party, or official mistake, unmixed with any negligence of his own. *Chevrolet Pickup Truck,* 778 S.W.2d at 464–65; *Baker,* 582 S.W.2d at 409. If the petitioner meets his burden, the fact finder must determine whether the party with the burden of proof on the merits of the case has proved the elements of his cause of action. *Id.* Once it is determined that the petitioner is suffering under a wrongfully obtained judgment that is unsupported by the weight of the evidence, the court should grant the requested relief. *Id.*

## B. Summary of Facts

On July 31, 1987, Cannon sued BHT for breach of contract, claiming that the company failed to pay him severance pay, bonuses, and vacation pay that he was owed when his employment was terminated. Cannon's attorney upon filing suit was Mark Davidson, whose office address was listed at 723 Main Street. Davidson's name and address appeared on Cannon's original petition and on the court's docket sheet. Davidson was elected to the position of district judge in November of 1988, and his new place of employment was at the 11th District Court, located at 301 Fannin.

Cannon hired George Bishop in 1990 to take over his case from Davidson. Davidson testified during the bill of review proceeding that someone from Bishop's office came to Davidson's chambers and got him to sign a motion substituting Bishop as counsel. However, Davidson testified that, after signing the motion, he made no effort to ensure that it was in fact filed with the trial court. Further, Bishop testified that, although he instructed one of the attorneys in his office to take the motion to Judge Davidson's chambers to be signed and filed, he neither saw the motion after it was signed nor ensured that it was in fact filed with the trial court. The court took judicial notice of the fact that its file did not show whether the motion was ever filed with the court.

On October 28, 1991, the trial court issued an order referring Cannon's case to mediation that stated that it was carbon copied to the mediator, BHT's counsel, and Davidson. However, Bishop testified that he received a copy of the order from the court. Further, the record reflects that, after the order was issued, the mediator sent an introductory letter to Bishop as well as ICO's counsel.

Cannon's case was placed on the trial court's dismissal docket on December 4, 1991. The notice of the trial court's intent to dismiss was addressed to the mediator, BHT's counsel, and Davidson at his Main Street address. Further, the record indicates that Davidson's notice was returned to the court marked "return to sender." The notice indicated that Cannon's case would likely be dismissed unless the parties filed a joint status report with the court's clerk.

ICO purchased BHT in 1992. In response to the December 1991 notice of the court's intent to dismiss, ICO's counsel, without any input by Bishop or Cannon, filed a status report with the court on February 7, 1992, that listed Bishop as Cannon's counsel of record and gave his address. The status report referenced the December 1991 notice and stated that a carbon copy was sent to Bishop.

The record contains a second notice from the court, dated April 7, 1992, that indicated that Cannon's case would be dismissed for want of prosecution unless a verified motion to retain was filed on or before May 15. This notice was also addressed to the mediator, BHT's counsel, and Davidson at his Main Street address. However, unlike the December 1991 notice, the record does not indicate whether the notice was in fact mailed to Davidson or "returned to sender." The record does not show that either Davidson or Bishop filed the verified motion to retain required by the April 1992 notice.

On June 2, 1992, the trial court dismissed Cannon's suit for want of prosecution. Although the dismissal order stated that notice of the dismissal setting was given to all parties of record, the record does not show whether the notice of the order itself was sent to Davidson, Cannon, or Bishop.

The record shows that much activity occurred regarding Cannon's case both before and after the dismissal for want of prosecu-

tion: Mediation was scheduled for several dates but never occurred due to scheduling conflicts. At the time Cannon's case was dismissed in June 1992, mediation was scheduled by agreement for September 1, 1992. Additionally, Bishop exchanged correspondence numerous times with counsel for BHT and ICO between October of 1990 and September of 1992, stating his desire to depose various agents of both corporations. During the correspondence that occurred after Cannon's case was dismissed for want of prosecution, ICO never mentioned that Cannon's case had been dismissed.

Nevertheless, the record contains no evidence that either Cannon or his lawyers filed a written request for a trial setting before Cannon's case was dismissed, or filed any document with the court between 1987, when the original petition was filed, and 1992. Additionally, Bishop could not remember whether he made any inquiry to the court prior to April of 1993 regarding the status of his case.

On April 28, 1993, Cannon filed a petition for bill of review with the trial court on the basis that neither he nor his attorneys received notice of either the court's intent to dismiss his case for want of prosecution or the dismissal order itself. At the trial on his petition, Cannon testified that he was not aware of the dismissal until March of 1993, more than six months after his case had been dismissed for want of prosecution. Davidson testified that he received no notice regarding Cannon's suit after taking office and signing the motion to substitute Bishop for himself as counsel of record; however, the trial court's file did not show that Davidson filed a change of address with the court. Finally, Bishop testified that he did not receive timely notice of either the December 1991 notice of the court's intent to dismiss Cannon's case or the notice of dismissal itself. Bishop stated that he looked for the court's order of dismissal at the courthouse but found nothing until a week before trial.

At the close of Cannon's trial, the court submitted an issue to the jury asking whether it found from a preponderance of the evidence that Cannon was prevented from prosecuting his claim by the accident or mistake of the court officials of the 269th district

court unmixed with any fault or negligence on the part of Cannon or his attorney. As noted, the jury returned a verdict in Cannon's favor, but the trial court granted ICO's motion for judgment notwithstanding the verdict and entered judgment that Cannon take nothing.

## C. Cannon's First Point of Error

Cannon first contends that the trial court erred in granting ICO's motion for judgment notwithstanding the verdict because the evidence was legally sufficient to support the jury's finding that his case met bill of review criteria. In order to uphold a trial court's judgment notwithstanding the verdict, an appellate court must determine that no evidence supports the jury's findings. *Mancorp, Inc., v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). When reviewing a no evidence point, an appellate court is limited to reviewing only the evidence tending to support the jury's verdict and must disregard all evidence to the contrary. *Id.* at 227. If more than a scintilla of evidence supports the jury's finding, it must be upheld. *Id.* at 228. In other words, we may not find the evidence legally insufficient unless we are persuaded that a "vital fact may not reasonably be inferred from the meager facts proved in the particular case." *Tex. Dep't. of Mental Health v. Petty*, 817 S.W.2d 707, 717 (Tex. App.—Austin 1991), *aff'd*, 848 S.W.2d 680 (Tex.1992) (quoting Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 365 (1960)).

ICO requested a motion for judgment notwithstanding the verdict on three grounds: (1) there was no evidence of any official mistake or error by a court official; (2) there was no evidence that the trial court's order dismissing Cannon's case for want of prosecution was unmixed with any fault or negligence of himself or his attorney; and (3) there was no evidence that Cannon and his attorneys did not receive notice of the dismissal for want of prosecution at a time when other legal remedies were available. If, as in the present case, the trial court does not state its grounds for granting a judgment notwithstanding the verdict, the ruling will be upheld if any of the stated

grounds in the motion will uphold the judgment. *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991). It is the appellant's burden to discredit each ground in the appellee's motion. *Id; Friedman v. Houston Sports Ass'n,* 731 S.W.2d 572, 573 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

We now consider whether Cannon produced legally sufficient evidence to support the bill of review elements that ICO challenged in its motion for judgment notwithstanding the verdict.

### 1. Official Mistake

Cannon asserts two grounds to support his contention that, because of official mistake, he did not receive notice of the trial court's intent to dismiss his case for want of prosecution. Cannon contends that the clerk did not provide Cannon, Davidson, or Bishop any notice regarding the court's intent to dismiss his suit or the order of dismissal. Additionally, he argues that the clerk's notice of intent to dismiss did not constitute notice that complied with rule 165a(1) of the rules of civil procedure.

We first address Cannon's contention that the clerk failed to provide Cannon, Davidson, or Bishop any notice of the court's intent to dismiss Cannon's suit or the order of dismissal. As noted, the court's December 1991 notice of intent to dismiss indicated that Cannon's case would likely be dismissed unless a status report was filed with the clerk. Since ICO filed a status report in response to this notice and thus prevented the initial dismissal of Cannon's case, the key issue for our consideration is whether there is legally sufficient evidence that the dismissal of Cannon's case for want of prosecution was rendered because of an official mistake regarding the court's April 1992 notice of intent to dismiss and the court's June 1992 order of dismissal. To determine whether the evidence is legally sufficient to support the challenged jury finding, we consider two questions: (a) Did the clerk send the court's April and June notices to either Cannon or his attorney? and (b) If not, is there legally sufficient evidence that this was the result of an official mistake?

■ As noted, the June 1992 order dismissing Cannon's case for want of prosecution indicated that notice of the dismissal setting was given to all parties of record. Recitals contained in a judgment are presumed true, but this presumption is rebuttable when there is a conflict between the judgment and the record. *MJR Fin., Inc. v. Marshall,* 840 S.W.2d 5, 9 (Tex.App.—Dallas 1992, no writ).

Rule 165a(1) states that the clerk must send notice of the court's intent to dismiss and the date and place of the dismissal hearing to each attorney of record to the address shown on the docket or in the papers on file. *Osterloh v. Ohio Decorative Prod.,* 881 S.W.2d 580, 582 (Tex.App.—Houston [1st Dist.] 1994, no writ); *General Motors Acceptance Corp. v. City of Houston,* 857 S.W.2d 731, 733 (Tex.App.—Houston [14th Dist.] 1993, no writ); Tex.R.Civ.P. 165a(1). Alternatively, this notice must be sent to each party not represented by an attorney if his address is shown on the docket or in the papers on file. Tex.R.Civ.P. 165a(1). Once the order of dismissal is signed, rule 306a requires the clerk to give immediate notice to the parties or their attorneys by first-class mail advising them of the judgment. *General Motors Acceptance Corp.,* 857 S.W.2d at 733; Tex.R.Civ.P. 306a.

■ The occurrence of an event that prohibits an attorney from practicing law on behalf of his client terminates the attorney-client relationship. *See Sebastian v. Braeburn Valley Homeowner's Ass'n,* 872 S.W.2d 40, 42 (Tex.App.—Houston [1st Dist.] 1994, no writ) (relinquishment of law license terminated attorney-client relationship). Further, notice acquired by an attorney after the termination of the attorney-client relationship will not be imputed to the former client. *Langdale v. Villamil,* 813 S.W.2d 187, 190 (Tex.App.—Houston [14th Dist.] 1991, no writ). The Texas Code of Judicial Conduct expressly prohibits a judge from practicing law except as permitted by statute or the code. Texas Supreme Court, Code of Judicial Conduct, Canon 6, pt. G (1994). Despite the fact that Davidson was prohibited from practicing law on Cannon's behalf after

his election in 1988, the record reflects that the April 1992 notice of intent to dismiss Cannon's case was addressed to Davidson rather than Bishop. Further, Bishop testified that he did not receive notice of the court's June 1992 dismissal order, and Cannon said that he was not personally aware of the dismissal of his case until March of 1993. We hold that this evidence was sufficient to rebut the presumption that the April 1992 notice of the court's intent to dismiss Cannon's case was sent to either Cannon or his attorney.

We next consider whether the court clerk committed an official mistake by not sending Bishop and Cannon the April and June notices. The record reflects that Mark Davidson was elected as judge of the 11th district court in November 1988, some three and one-half years before Cannon's case was dismissed for want of prosecution. Despite the fact that this was public information, *see* Tex.Gov't Code Ann. § 552.022(4) (Vernon 1994), the district clerk addressed the April 1992 notice of intent to dismiss Cannon's case to Davidson.

ICO argues that the district clerk had no duty to send the court's notices to anyone other than Davidson since the court's file contained no notice of withdrawal or substitution of counsel pursuant to rules 8 and 10 of the rules of civil procedure. We disagree. Rules 165a and 306a specifically require the clerk of the court to send notice of the court's intent to dismiss a case for want of prosecution and order of dismissal to *each attorney of record*. Under the circumstances, we hold that Bishop was an attorney of record for Cannon entitled to notice under both rules. The February 1992 status report that ICO filed with the court listed Bishop as Cannon's counsel of record. Further, the record contains additional evidence that the clerk knew that Bishop was a counsel of record for Cannon at the time of the April 1992 notice of intent to dismiss. Bishop testified that he received from the court a copy of the October 1991 order referring the case to mediation. The record shows that the mediator sent an introductory letter to Bishop as well as ICO's counsel after the court issued the mediation order. We hold that the clerk committed an official mistake by sending the notices to Davidson rather than Bishop.

We additionally hold that the clerk committed an official mistake by not stating the date and place of Cannon's dismissal hearing in the court's April 1992 notice of intent to dismiss Cannon's case. Although the court's dismissal order recited that notice of the dismissal setting was given to all parties of record, the April 1992 notice merely stated that Cannon's case would be dismissed if he did not timely file a verified motion to retain. Rule 165a(1) requires notice of the *date and place* of the dismissal hearing. *Osterloh,* 881 S.W.2d at 582; *General Motors Acceptance Corp.,* 857 S.W.2d at 733; Tex.R.Civ.P. 165a(1).

## 2. Negligence

We next consider whether there is sufficient evidence to support the jury's finding that the clerk's mistake was unmixed with any negligence by Cannon or his attorneys. Viewing only the evidence favorable to Cannon, *Mancorp,* 802 S.W.2d at 227, we hold that the record contains legally sufficient evidence to support the jury's finding.

As noted, at trial Bishop testified and offered documentary evidence of numerous attempts to effect settlement and schedule mediation and depositions between December of 1991 and September of 1992. On two occasions, Cannon had a cashier's check ready to pay the mediator, but these checks were never used because the mediation sessions were not conducted.

## 3. Availability of Other Legal Remedies

Cannon contends that the evidence established that neither he nor his attorneys received notice of the dismissal for want of prosecution at a time when other legal remedies were available. We agree. As noted, the trial court dismissed Cannon's suit for want of prosecution on June 2, 1992. At the trial on Cannon's petition for bill of review, Cannon testified that he did not receive notice that his case had been dismissed until March of 1993. Further, Bishop testified that he did not receive either the court's December 1991 notice of its intent to dismiss Cannon's case or the dismissal order itself.

Finally, the April 1992 notice was addressed to Davidson rather than Bishop. We hold that the evidence established that neither Cannon nor Bishop received notice of the dismissal in time to pursue a legal remedy.

We sustain Cannon's first point of error.

### D. ICO's First Cross–Point

In its first cross-point of error, ICO argues that, in the event we hold that the evidence was legally sufficient to support the jury's finding that Cannon proved the elements of his petition for bill of review, we should nonetheless reverse this case for a new trial because the evidence is factually insufficient to support the finding. TEX.R.CIV.P. 324(c).

Cannon filed a notice of intent to limit his appeal to the judgment notwithstanding the verdict, and to the trial court's finding that there was no probative evidence to sustain the jury's verdict. Therefore, we first determine whether we may consider any of ICO's cross-points. This depends upon two issues: (1) whether Cannon filed a timely notice of intent to limit his appeal; and (2) whether Cannon could prevent ICO from asserting factual sufficiency cross-points by filing a notice of intent to limit his appeal.

The trial court signed its judgment on February 21, 1994. On February 26, 1994, ICO filed a "Motion to Modify, Correct or Reform Judgment," which requested the following corrections: (1) that the judgment be changed to reflect that the trial of the case occurred on January 10, 1994, as opposed to the stated date of February 21, 1994; and (2) that the hearing on Cannon's motion for judgment notwithstanding the verdict was had with proper notice and appearance of counsel. On March 14, 1994, 21 days after the court signed its judgment, Cannon filed a notice of intent to limit his appeal to the judgment notwithstanding the verdict, and to the trial court's finding that there was no probative evidence to sustain the jury's verdict.

Rule 40 of the Texas Rules of Appellate Procedure provides as follows:

No attempt to limit the scope of an appeal shall be effective unless the severable portion of the judgment from which the appeal is taken is designated in a notice served on all other parties to the trial court's final judgment within fifteen days after judgment is signed, or if a motion for new trial is filed by any party, within seventy-five days after the judgment is signed.

TEX.R.APP.P. 40(a)(4). Rule 329b(g) of the rules of civil procedure provides that a motion to correct, modify, or reform a judgment (as distinguished from a motion for nunc pro tunc under rule 316) extends the trial court's plenary power and the time for perfecting an appeal in the same manner as a motion for new trial. TEX.R.CIV.P. 329b(g). Therefore, a motion to correct, modify, or reform a judgment operates to permit an appellant to limit the scope of his appeal by filing notice of limitation of appeal within 75 days after the judgment is signed. As noted, Cannon filed his notice of limitation of appeal 21 days after the trial court signed its judgment. Therefore, to determine whether his notice was timely filed, we consider whether ICO's motion to modify the judgment was in substance a motion for judgment nunc pro tunc.

ICO contends that its motion to "Modify, Correct, or Reform Judgment" was actually a motion for judgment nunc pro tunc because it did not request a substantive change in the judgment. We disagree. A judgment nunc pro tunc is one that corrects clerical errors executed *after* the trial court has lost its plenary power. *Owens–Corning Fiberglas Corp. v. Wasiak*, 883 S.W.2d 402, 404–05 (Tex.App.—Austin 1994, no writ); *Ferguson v. Naylor*, 860 S.W.2d 123, 126 (Tex.App.—Amarillo 1993, writ denied); *Alford v. Whaley*, 794 S.W.2d 920, 922 (Tex. App.—Houston [1st Dist.] 1990, no writ). Thus, ICO's February 26 motion to modify the judgment was not a true motion for judgment nunc pro tunc because it was filed while the trial court still had plenary power to vacate, amend, or correct its judgment. A trial court's correction of a clerical error during the period of plenary power extends the appellate timetables. *Owens–Corning Fiberglas Corp.*, 883 S.W.2d at 404. We hold that ICO's motion to modify the trial court's judgment, pursuant to rule 329b(g) of the rules of civil procedure and rule 40(a)(4) of the rules of appellate procedure, extended

Cannon's time to file notice of intent to limit his appeal to 75 days after the judgment was signed. Since Cannon filed his notice within this period, we hold that his notice of intent to limit the appeal was timely.

 Nevertheless, we hold that Cannon's attempt to limit the scope of his appeal did not prevent ICO from asserting its factual sufficiency cross-points. Only severable portions of a trial court's judgment are subject to limitation on appeal. *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 639 (Tex.1989); *Kazmir v. Suburban Homes Realty*, 824 S.W.2d 239, 246 (Tex. App.—Texarkana 1992, writ denied); TEX. R.APP.P. 40(a)(4). Severance is proper if a controversy involves separate causes of action, each of which could be a complete lawsuit in itself. *Kazmir*, 824 S.W.2d at 246. An appeal cannot be limited where the issues for review call the entire controversy into question, such as a no evidence or insufficient evidence point of error. *See Tapiador v. North Am. Lloyds of Texas*, 772 S.W.2d 954, 955 (Tex.App.—Houston [1st Dist.] 1989, no writ). Since Cannon attempted to limit his appeal to the trial court's finding that there was no probative evidence to sustain the jury's verdict rather than a separate cause of action, we hold that his attempt to limit the scope of his appeal was ineffective as to ICO's factual sufficiency cross-points.

 We now consider ICO's first cross-point. An assertion of factual insufficiency has validity "when all of the evidence is considered and weighed, [and] the evidence supporting the finding is so weak or the contrary evidence is so overwhelming that the findings should be set aside." *Gorman v. Life Ins. Co. of N. Am.*, 859 S.W.2d 382, 388 (Tex.App.—Houston [1st Dist.] 1993, no writ). A factual sufficiency complaint has merit regardless of whether the record contains some evidence of probative force in support of the verdict when it is so contrary to the overwhelming weight of the evidence so as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). When examining a point of error on factual sufficiency grounds, we are required to examine both the evidence that supports and contradicts the verdict. *In re King's Estate*,

150 Tex. 662, 244 S.W.2d 660 (1951) (per curiam).

 Upon reviewing all of the evidence in the present case, we hold that it was factually sufficient to support the jury's finding that Cannon satisfied the elements of his petition for bill of review by a preponderance of the evidence. First, we hold that the evidence was sufficient to support the jury's finding that Cannon was prevented from prosecuting his case because of an accident or mistake of a court official. As noted, the June 1992 order dismissing Cannon's case for want of prosecution indicated that notice of the dismissal setting was given to all parties of record. However, the record reflects that the April 1992 notice of dismissal was addressed to Davidson even though the public records reflected that he had been elected as a district judge in 1988. Further, as noted, Cannon testified at trial that he did not receive notice that his case had been dismissed until March of 1993.

 We additionally hold that the evidence was factually sufficient to support the jury's finding that the clerk's official mistake was unmixed with any negligence on the part of Cannon or his attorneys. ICO points out that the record contains no evidence that either Cannon or his lawyers filed any document with the court between 1987, when the original petition was filed, and 1992. Cannon's lawyers did not file a written request for a trial setting before Cannon's case was dismissed. Further, the court's October 1991 mediation order, which Bishop testified he received, stated that it was carbon copied to Davidson rather than Bishop. Finally, Bishop could not remember whether he made any inquiry to the court prior to April of 1993 regarding the status of Cannon's case. Nevertheless, upon considering all of the evidence in the record, we conclude that it was factually sufficient to support the jury's finding. Although Cannon's attorneys filed no documents in the trial court's file subsequent to the initial pleadings and notice as to where service should be made, the record is replete with evidence of letter correspondence and telephone calls with attorneys for BHT and ICO in which Bishop attempted to effect

settlement and schedule depositions and mediation sessions. This is some evidence that Bishop did not neglect Cannon's case. The question of negligence in a trial on a petition for bill of review is for the jury when the facts are such that the jury could draw an inference either way. *See Lyons v. Paul*, 321 S.W.2d 944, 950 (Tex.Civ.App.—Waco 1958, writ ref'd n.r.e.).

We overrule ICO's first cross-point of error.

## II. The Breach of Contract Cause of Action

In his second point of error, Cannon argues that the trial court erred in granting ICO's motion for judgment notwithstanding the verdict because the evidence is legally sufficient to support the jury's finding that Cannon proved his breach of contract claim on the merits.

### A. Summary of Facts

Cannon testified at trial that he was hired as a tax manager in 1980 for a company called Energy Services International ("ESI"). While maintaining his position as tax manager, Cannon was also promoted to treasurer of the company, an executive position. ESI became BHT in February of 1983. Cannon testified that, on August 1, 1985, he was fired by Barry Kulpa, a chief financial officer of BHT, for refusing to sign a contract. He said that he refused to sign the contract because Howard Bull, the president of BHT, told him that the contract was illegal.

Cannon testified that, when he was fired, BHT gave him none of the bonuses or vacation pay that he was due; additionally, he said that BHT gave him only part of the severance pay that was due him. He said that he was familiar with BHT's bonus policies while he worked there as treasurer. During Cannon's testimony, Bishop introduced into evidence plaintiff's exhibits 2 and 3, which detailed BHT's bonus objectives for 1985. Cannon testified that these exhibits set forth a three-tiered bonus plan for the year 1985 and described how the plan worked. He stated that he satisfied all three

tiers for 1985 and was therefore owed $12,685.26 in bonuses.

Cannon testified that, at the time of his discharge, he had accumulated 8 days of vacation pay totalling $1,699.20, and BHT refused to pay him. Additionally, he stated that, while treasurer, he was personally aware of the policies at BHT concerning severance pay. Employees of BHT were entitled to severance pay unless they were discharged for cause. The range of pay depended upon the level of employee, but executives were entitled to up to nine months severance pay. Cannon testified that he had received one month's severance pay when discharged and was seeking an additional four months pay totalling $17,433.32. He said that this amount was "in line" with the amount of severance pay to which other executives at his level were entitled. Finally, Cannon testified that, based on his calculations, ICO owed him a total of $31,727.78.

Jack Wood, a former president for United States Consultants ("USC"), testified at trial that USC was owned by BHT during his tenure as president from 1979 to the end of 1984. He testified from personal knowledge that, while he was president of USC, BHT had a policy that required payment of severance pay to any executive discharged without cause. Wood stated that he received severance pay upon his discharge in December of 1984. Wood added that, upon his discharge, BHT had a policy that required payment of accumulated bonuses to discharged employees. Finally, Wood testified that Cannon had worked with him on a project and done a good job, and he knew of nothing that Cannon had ever done to justify discharge.

Kenneth Watkins testified at trial that he worked for BHT for 28 years and advanced to the position of vice-president before his discharge in October of 1989. Although he did not know the specifics of Cannon's bonus plan, Watkins stated that company policy in 1985 was that employees fired without cause during the year would receive earned bonuses calculated pro rata based on a fiscal year ending September 30. Additionally, upon his discharge in 1989, Watkins testified that he received four months severance pay. Watkins stated that he had worked with Cannon,

Cannon did a good job, and he knew of nothing that Cannon had done that would warrant discharge for cause.

Finally, Bishop read an interrogatory propounded to ICO in which he asked whether "ICO Tubular Services, Inc." assumed the liabilities of BHT as a result of the purchase of BHT's shares in 1992. In its response, ICO's counsel indicated that it was his interpretation of the purchase agreement between BHT and "ICO, Inc." that Cannon's lawsuit was included in the transfer of assets and liabilities from BHT to "ICO, Inc." ICO's response also indicated that, since the lawsuit between Cannon and BHT had been dismissed at the time ICO purchased BHT, the terms of the purchase agreement controlled and "should be consulted as to the effect such dismissal prior to the purchase may have had on ... consequences not yet fully realized or contemplated." Bishop additionally attempted to introduce the purchase agreement between BHT and ICO into evidence as plaintiff's exhibit one. However, the court refused admission of this agreement.

### B. Analysis

Cannon contends that the evidence is legally sufficient to support the following findings by the jury: (1) BHT had an agreement to pay Cannon severance pay, bonuses, and vacation pay as of August 1, 1985; and (2) ICO owed Cannon $31,727.78 due to BHT's breach of its agreement. In a reply point and in its second and third cross-points, ICO responds that there is no evidence, or factually insufficient evidence, to support the jury's finding that BHT had an agreement to pay Cannon severance pay. Additionally, ICO contends that, even assuming the evidence supports the existence of such an agreement, the record contains no evidence, or factually insufficient evidence, that ICO assumed BHT's liability to Cannon.

■ We hold that the evidence was both legally and factually sufficient to support the jury's finding that BHT had an agreement to pay Cannon bonuses and vacation pay. As noted, Cannon said that he was familiar with BHT's bonus policies while he worked as its treasurer, and he described BHT's three-tiered bonus plan for 1985. Cannon testified that he satisfied all three-tiers for 1985 and was therefore owed $12,685.26 in bonuses. Cannon additionally stated that, at the time of his discharge, he had accumulated 8 days of vacation pay totalling $1,699.20, and BHT refused to pay him.

■ Additionally, we conclude that the evidence was legally and factually sufficient to support the jury's finding that BHT had an agreement to pay Cannon severance pay. Wood testified from personal knowledge that he received severance pay when he was discharged in December 1984. Watkins testified from personal knowledge that he received four months severance pay upon being discharged in 1989. Since the evidence showed that BHT had a severance pay policy in effect for years both prior to and after 1985, the jury could have inferred that BHT also had a severance pay policy in effect when Cannon was discharged in 1985. Further, Cannon testified that he was personally aware of the policies at BHT concerning severance pay from his experience there as treasurer. Based upon his knowledge of these policies, Cannon sought four months pay worth $17,433.32, an amount in the range of the pay to which other executives at his level were entitled.

We now consider whether there is sufficient evidence that ICO was liable to Cannon for BHT's breach of contract. ICO notes that the court's charge to the jury asked whether it found from a preponderance of the evidence that BHT had an agreement to pay Cannon severance pay, bonuses, and vacation pay as of August 1, 1985. The court did not submit an issue to the jury as to whether ICO was liable to Cannon, or whether ICO agreed to assume any of the assets and liabilities of BHT. ICO additionally notes that the court refused to admit into evidence the purchase agreement between BHT and ICO in which ICO purportedly agreed to assume BHT's liabilities.

■ In a breach of contract action, the plaintiff has the burden to prove that the defendant has obligated himself under the contract. *Miles v. Plumbing Serv. of Houston, Inc.*, 668 S.W.2d 509, 512 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.).

Maintenance of an action for breach of contract requires privity between the damaged party and the party sought to be held liable. *C & C Partners v. Sun Exploration and Prod. Co.,* 783 S.W.2d 707, 721 (Tex.App.—Dallas 1989, writ denied). The defendant's denial of this element is neither an affirmative defense nor a matter that must be verified pursuant to rules 93 and 94 of the rules of civil procedure. *C & C Partners,* 783 S.W.2d at 721–722; *Miles,* 668 S.W.2d at 512.

 To recover on his contractual cause of action against ICO, Cannon had to show that ICO assumed his lawsuit as part of the transfer of assets and liabilities from BHT. The record reflects that neither party requested such an instruction or raised this issue in its objections to the court's charge. When a charge is submitted with an element missing from a cause or defense without objection by either party, the parties waive a jury trial on the omitted element. *Larrumbide v. Doctors Health Facilities,* 734 S.W.2d 685, 691–92 (Tex.App.—Dallas 1987, writ denied); Tex.R.Civ.P. 279. However, when the evidence conclusively establishes an issue, the trial court need not submit that issue to the jury. *See Washington v. Reliable Life Ins. Co.,* 581 S.W.2d 153, 157 (Tex.1979).

 ICO notes that the court refused to admit into evidence the purchase agreement between BHT and ICO in which ICO purportedly agreed to assume BHT's liabilities. However, the record shows that the trial court ruled that ICO assumed BHT's liabilities. Further, Bishop read into evidence an interrogatory propounded to ICO in which he asked whether "ICO Tubular Services, Inc." assumed the liabilities of BHT as a result of the purchase of BHT's shares in 1992. In its response, ICO's counsel indicated that it was his interpretation of the agreement between BHT and "ICO, Inc." that Cannon's lawsuit was included in the transfer of assets and liabilities from BHT to ICO. Upon considering the court's ruling, Cannon's interrogatory, and ICO's response, we hold that this evidence conclusively established that ICO assumed Cannon's lawsuit as part of its purchase of assets and liabilities from BHT.

### III. Attorney's Fees

The jury additionally found that reasonable and necessary attorney's fees were owed Cannon in the following amounts: (1) $25,000 for the preparation and trial of the case; (2) $15,000 in the event that the case was appealed to one of the courts of appeals; (3) $5,000 for expenses incurred should an application for writ of error be filed in the Texas Supreme Court; and (4) $10,000 for expenses incurred in preparation for presentation of the case to the supreme court should writ of error be granted.

At trial, Bishop described his qualifications and stated that reasonable attorney's fees up to and including the trial on the bill of review were $25,000. Bishop also testified that reasonable attorney's fees to be incurred should his case be appealed to one of the courts of appeals totalled $10,000. However, contrary to Bishop's testimony, the jury awarded him $15,000 should the case be appealed. Cannon concedes that the evidence is insufficient to support the $15,000 awarded by the jury in the event his case was appealed to one of the courts of appeals, and he has volunteered to remit the $5,000 excess. Accordingly, we render judgment that Cannon receive $10,000 in attorney's fees for preparation of this appeal.

We sustain Cannon's second point of error and overrule ICO's second and third cross-points of error. We reverse the judgment of the trial court and render judgment for Cannon on the jury's verdict, except for the $5,000 remittitur of attorney's fees incurred in the preparation of this appeal. However, we remand this case to the trial court to determine the amount of interest to which Cannon is entitled.