Hope Ann MOORE, Appellant,

v.

SHORELINE VENTURES, INC., Shoreline Ventures D/B/A Banana Bay, Virginia McMinn, Individually and D/B/A Banana Bay, and Bob Wesson, Individually and D/B/A Banana Bay, Appellees.

No. 09–94–020 CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 24, 1995.

Decided Aug. 17, 1995.

Rehearing Overruled Oct. 6, 1995.

Alexander B. Klein, III, Stephens & Stephens, Houston, for appellant.

Larry G. Black, Wright & Greenhill, Austin, for appellees.

Michael R. Wadler, Polland & Cook, Houston, for amicus curiae Mothers Against Drunk Driving.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Appellant Hope Ann Moore appeals the trial court's granting of summary judgment in favor of appellees. In the court below, Appellant Moore brought suit against appellees for injuries which she sustained in an automobile collision. It is appellant's contention that the appellees had a duty, pursuant to general negligence principles and §§ 315 and 319 of the RESTATEMENT (SECOND) OF TORTS (1965), to prevent Travis Ginsel, the other driver, from leaving appellees' premises and driving on the road in an impaired state.

### Facts

Appellant Hope Ann Moore was westbound on Highway 105 in Montgomery County when she was struck head-on by the drunk driver, Ginsel. At the time of the accident, Ginsel, age 20, was uninsured; his blood alcohol level was .27.

Banana Bay is a restaurant and bar owned by appellee, Shoreline Ventures, Inc., d/b/a Banana Bay. Bob Wesson, appellee, is the president of Shoreline Ventures, Inc. Virginia McMinn, another appellee, owns the property where Banana Bay is located.

On May 3, 1992, Travis Lee Ginsel and a friend came from a campground adjacent to Banana Bay, appeared at the door of the club, and requested permission to use the rest room. According to appellees, as a courtesy, the doorman of Banana Bay allowed the two men to enter the premises on the condition that they walk straight to the rest room and then promptly leave. Ginsel left the rest room first and became involved in an altercation while still in the bar. His friend then came out of the rest room and hurried Ginsel out of Banana Bay.

Sometime thereafter Ginsel left the area in his truck and was involved in the head-on collision with appellant.

Appellant brings forth four points of error as follows:

### POINT OF ERROR NUMBER ONE

The trial court erred in granting Appellee's Motion for Summary Judgment.

### POINT OF ERROR NUMBER TWO

The trial court erred in granting Appellee's Motion for Summary Judgment because § 2.03 of the Texas Alcoholic Beverage Code which bars common law causes of action against alcohol providers violates the public policy of this state which encourages financial responsibility.

### POINT OF ERROR NUMBER THREE

The trial court erred in granting Appellee's Motion for Summary Judgment because Defendants owed Plaintiff a legal duty pursuant to § 315 and § 319 of the *Restatement of Torts 2nd.*

### POINT OF ERROR NUMBER FOUR

The trial court erred in granting Appellees' Motion for Summary Judgment because no evidence was offered regarding the elements required under Section 106.14 of the Texas Alcoholic Beverage Code.

■ When reviewing a summary judgment on appeal, this Court must determine whether the movant carried his burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is to be taken as true; in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* at 548–549. If the defendant is the movant, he must submit summary judgment evidence disproving at least one element of each of the plaintiff's causes of action. *Bradley v. Quality Service Tank Lines,* 659 S.W.2d 33, 34 (Tex. 1983); *Rayos v. Chrysler Credit Corp.,* 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

■ Appellant states his initial point in broad form; point one simply declares that the trial court erred in granting the motion for summary judgment. Although point one does not specify how the court erred, it is, nonetheless, sufficient to permit argument as to all possible grounds upon which summary judgment should have been denied. *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). A single broad point of error in an appeal of the granting of a summary judgment permits appellant to raise every legal attack on the summary judgment. *Spencer v. City of Dallas,* 819 S.W.2d 612, 615 (Tex.App.—Dallas 1991, no writ). Appellant is able to raise not only arguments focusing on whether a genuine issue of material fact was raised by the summary judgment evidence, but also is able to contest non-evidentiary issues, such as the legal interpretation of a statute. *See Cassingham v. Lutheran Sunburst Health Serv.,* 748 S.W.2d 589, 590 (Tex.App.—San Antonio 1988, no writ.)

Appellant raises both types of arguments—statutory interpretation and legal arguments, as well as public policy arguments concerning liability insurance and the Dram Shop Act, Tex.Alco.Bev.Code Ann. §§ 2.01–2.03 (Vernon 1995).

■ Under points of error one and two, appellant relies solely on public policy arguments to urge the proposition that Texas

lounges should be required to carry dram shop insurance in order to be able to assert the bar to common law causes of action found in Section 2.03 of the Texas Alcoholic Beverage Code. Though well-argued, these public policy arguments, which are advanced in the briefs of both appellant and the amicus curiae, Mothers Against Drunk Driving (MADD), are matters to be addressed by the Texas legislature and not by this Court. Moreover, the public policy arguments are actually inapposite here, because the Dram Shop Act does not come into play. That Act, by its own terms, applies to those situations where the "provider" sells, serves, or provides an alcoholic beverage to an individual. *See* TEX. ALCO.BEV.CODE ANN. §§ 2.01, 2.02. The Dram Shop Act does not apply in the instant case since Ginsel was not provided, sold, or served alcoholic beverages at Banana Bay. Points of error one and two are overruled.

■ Appellant contends in point of error three that appellees owe her a legal duty pursuant to general negligence principles and RESTATEMENT (SECOND) OF TORTS §§ 315, 319. This contention runs counter to appellees' motion for summary judgment, which is grounded on the opposite premise—namely that appellees owe no duty to Moore.

The existence of a duty is an essential element in any negligence action. Whether or not a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Indeed, in order to establish tort liability, a plaintiff must initially prove the existence and breach of a duty owed to him by the defendant. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983). Appellant argues that the duty owed by appellees is predicated upon RESTATEMENT (SECOND) OF TORTS §§ 315, 319. Both sections have to do with the duty to control the actions of a third person. The issue in this case, of course, is whether appellees had a duty to control the actions of Travis Ginsel, the intoxicated driver, whose vehicle struck Hope Ann Moore head-on.

■ As a general rule, a person is under no duty to control the actions of third persons absent a special relationship, such as master/servant or parent/child. *See Triplex Communications, Inc., v. Riley*, 38 Tex.Sup. Ct.J. 765, 900 S.W.2d 716 (June 8, 1995). That rule is taken from RESTATEMENT (SECOND) OF TORTS § 315 which provides as follows:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

The existence of the duty under Section 315 depends upon the existence of the special relationship between either the actor and the third party (i.e., between Banana Bay and Ginsel) or between the actor and the "other" (i.e., between Banana Bay and Moore). No such relationship exists in this case.

RESTATEMENT (SECOND) OF TORTS §§ 316–320 set out those relationships which fall in the category of "special relations." Section 316 is the parent/child relation; Section 317 is the master/servant relation; and Section 318 is the possessor of land or chattels/licensee relation. Neither Ginsel nor Moore had such a relationship with Banana Bay. Ginsel entered the establishment with a friend, went to the restroom, was involved in some kind of altercation in the bar (which is not described in the record), and left the premises. He was not served, provided, or sold, and did not consume, any alcohol on the premises. There was no special relationship involved.

The Texas Supreme Court has specifically recognized the duty described in Section 315 of the RESTATEMENT (SECOND) OF TORTS in connection with the special relationship between employer and employee and adopted that standard of duty in *Otis*, 668 S.W.2d at 311. There, the employee, who was intoxicated on the job, was told that he should go home, was escorted to the company's parking lot by a supervisor, and was asked if he could make it home. He replied in the affirmative and drove away. Three miles down the road, the employee was involved in an accident

which was fatal to another person. Under that set of facts, the Texas Supreme Court in *Otis* recognized the existence of a duty in the employer/employee context. Citing *Otis*, the Texas Supreme Court in *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex.1993), explained further: "While we noted that there is no general duty to control the conduct of another, we recognized a duty in that instance [Otis] because of the employer's authority over the employee.... [O]ur decision in *Otis* was premised on 'the employer's negligent exercise of control over the employee,' rather than on a general duty to prevent intoxicated individuals from driving."

In the instant case, there is no special relationship between the bar and Ginsel. Ginsel did not buy anything at the bar; nor did he consume any alcoholic beverages while on the premises. He was not a customer, an employee, a child, or any other relation which might give rise to a duty.

Moore also urges, pursuant to Section 319 of the RESTATEMENT (SECOND) OF TORTS, that Banana Bay had a duty to control Travis Ginsel. Section 319 provides as follows:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

What appellant would have us believe is that appellees took charge of Ginsel by allowing him to enter the bar to use the restroom. However, appellant provides no summary judgment evidence which raises a fact issue regarding whether or not appellants "took charge" of Ginsel. The mere acquiescence by appellees in allowing Ginsel to use the restroom does not constitute "taking charge" of him. If appellees had escorted Ginsel to his vehicle, as did the supervisor in *Otis*, that would have been an affirmative act which may have imposed a duty upon appellants. One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care. *Otis*, 668 S.W.2d at 309. In that respect, this case is not analogous to *Otis*; Banana Bay did not take charge of Ginsel; nor did it have

a duty to do so. Banana Bay had no right, let alone a duty, to take away Ginsel's keys, no right to restrain him from leaving, and certainly no right to control him when he left the premises. Under the facts of this case appellees proved, as a matter of law, that they owed no duty to Ginsel or Moore.

In point of error three, appellant is, in effect, urging the Court to extend the duty owed to third persons beyond that outlined in RESTATEMENT (SECOND) OF TORTS §§ 315, 319 or recognized by Texas courts. In two recent cases before the Texas Supreme Court, the appellants therein sought to extend the definition of duty owed to third parties in alcohol-related cases. *Triplex, supra; Graff, supra*. In both cases, the Texas Supreme Court refused to either extend an existing duty or impose a new one. The difficulty involved in the consideration of whether or not to extend an already-existing duty or to impose a new common law duty is discussed by the Texas Supreme Court in *Graff, supra*. In that case, the Supreme Court was asked to impose a common law duty on social hosts who make alcohol available to intoxicated adult guests who, the host knows, will be driving.

> Deciding whether to impose a new common-law duty involves complex considerations of public policy. We have said that these considerations include " 'social, economic, and political questions,' and their application to the particular facts at hand." *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 662 (Tex.1990) (quoting 1 *Texas Torts and Remedies* § 1.03[2] (1989)). Among other factors, we consider the extent of the risk involved, "the foreseeability and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Houston Transp. Co.*, 801 S.W.2d at 525. We have also emphasized other factors. For example, questions of duty have turned on whether one party has superior knowledge of the risk, and whether a right to control the actor whose conduct precipitated the harm exists. *See e.g., Seagrams v. McGuire*, 814

S.W.2d 385 (Tex.1991) (declining to recognize a legal duty of an alcohol manufacturer to warn consumers against danger of alcoholism because the risk is common knowledge); *Greater Houston Transp. Co.,* 801 S.W.2d at 525 (*citing Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1984); RESTATEMENT (SECOND) OF TORTS § 315 (1965) (noting that no general duty exists to control the conduct of others)).

*Id.,* 858 S.W.2d at 920.

The Supreme Court declined to impose such a duty upon social hosts. Opening the Pandora's box associated with the imposition of such a duty proved too problematic for the Court. Too many unanswered questions remained.

> Would a simple request not to drive suffice? Or is more required? Is the host required to physically restrain the guests, take their car keys, or disable their vehicles?

*Id.* at 921.

In similar fashion, the Texas Supreme Court in *Triplex, supra,* declined to find the existence of an alleged duty in a case involving a radio station which "collaborated" with a club (the Palace) on a weekly event known as "B–95 Ladies Night at The Palace." In advertising the ladies night, the radio station indicated that persons aged eighteen to twenty would be admitted into the establishment. In addition, a B–95 radio disc jockey on-site at the Palace made announcements encouraging patrons to go to the bar for drink specials and other promotions. One of the Palace's under-age patrons left the bar in an intoxicated condition one night and was involved in an accident in which a pedestrian was seriously injured. A judgment was taken against the Palace under the Dram Shop Act. The radio station was not liable under the Act, since it was not a provider of alcohol.

As in *Graff,* the Texas Supreme Court in *Triplex* cited the rule in RESTATEMENT (SECOND) OF TORTS § 315 for the proposition that there is no legal duty in Texas to control the actions of third persons absent a special relationship, such as master/servant or parent/child. Under that rule, the Court held that the radio station had no duty to control the actions of the intoxicated patron of the Palace. To justify departure from the rule would require a showing that the promotions of B–95 were calculated to incite reckless or unlawful behavior. Without a showing of that level of culpability, the Court would not depart from well-settled duty rules.

Following the precedent of *Otis, Graff,* and *Triplex,* we are bound to follow the well-settled duty rules set out by the Texas Supreme Court. We, therefore, decline to extend the definition of the legal duty owed to third persons and hold that appellees do not owe a duty to appellant under this set of facts. Point of error three is overruled.

Having found that appellees owed no duty to Moore or Ginsel under the facts herein, it is not necessary to consider point of error four. TEX.ALCO.BEV.CODE ANN. § 106.14 (Vernon 1995) serves to limit liability of the employer-provider provided that the employees have gone through certain training programs sponsored by the Texas Alcoholic Beverage Commission. We have overruled points of error one, two, and three; accordingly, whether appellees satisfied the requirements of Section 106.14 is of no consequence here. Point of error four is overruled.

The summary judgment is affirmed.

AFFIRMED.