ACCEPTED
08-21-00011-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
3/11/2021 10:44 AM
ELIZABETH G. FLORES
CLERK

**Appeal No. 08-21-00011-CV**

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
3/11/2021 10:44:37 AM
ELIZABETH G. FLORES
Clerk

**In the Court of Appeals**

**For the**

**Eighth District of Texas**

**El Paso, Texas**

---

**Vanessa Bolanos, Mayra Bolanos, and Shelia Walton, as Next Friend of Juan Manuel Solis, Decedent**

**v.**

**The Purple Goat, LLC**

---

**Appellant's Brief**

**Crocker Russell & Associates**
2401 Callender Road, Suite 103
Mansfield, Texas 76063
Tel. (817) 482-6570

Ali Crocker Russell
Texas Bar No. 24098868
Email: ali@cralawfirm.com
**Attorney for Appellant**

# IDENTITY OF PARTIES AND COUNSEL

Vanessa Bolanos, Mayra Bolanos, and Shelia Walton as Next Friend of Juan Manuel Solis, Decedent, Appellant

Appellant & Trial Counsel:

Ali Crocker Russell
Crocker Russell & Associates
2401 Callender Road, Suite 103
Mansfield, Texas 76063
Texas Bar No. 24098868
Email: ali@cralawfirm.com

The Purple Goat, Appellee
    Appellee Counsel

David Colley
Fletcher, Farley,
Shipman & Salinas, LLP
9201 N. Central Expressway, Ste. 600
Dallas, Texas
Texas Bar No. 04583600
Email:David.colley@fletcherfarley.com

**Table of Contents**

IDENTITY OF PARTIES & COUNSEL………………………………………..2

INDEX OF AUTHORITIES…………………………………………………4

STATEMENT OF CASE………………………………………………..8

ISSUES PRESENTED…………………………………………..10

STATEMENT OF FACTS……………………………….…11

ARGUMENT………………………………………………..13

ISSUE 1……………………………………………………...15

ISSUE 2……………………………………………....18

ISSUE 3………………………………………………...26

PRAYER………………………………………….28

CERTIFICATE OF COMPLIANCE………………………………………...28

CERTIFICATE OF SERVICE……………………………………………29

APPENDIX………………………………………………30

# INDEX OF AUTHORITIES

## STATE CASES

*Sabre Travel Int'l v. Deutshe Lufthansa*, 567 S.W.3d 725, 730 (Tex. 2019)

*Long v. State*, 2012 Tex. App. LEXIS 6201 (Tex. App. – Austin July 25, 2012, no pet.)

*The Corp. of the President of the Church of Jesus Christ of Latter-Day Saints v. Doe*, 2013 Tex. App. LEXIS 12543 (Tex. App. – Corpus Christi Oct. 10, 2013, no pet.)

*Double Diamond Del., Inc. v. Walkinshaw*, 2013 Tex. App. LEXIS 12447 (Tex. App. – Dallas Oct. 7, 2013, no pet.)

*ADT Sec. Servc. Van Peterson Fine Jewelers*, 2015 Tex. App. LEXIS 7831 (Tex. App. – Dallas July 29, 2015, no pet.) citing *Gulf Coast Asphalt Co. v. Lloyd*, 457 S.W.3d 539, 543-44 (Tex. App. – Houston [14th Dist.] 2015, no pet.) quoting Renee Forinash McElhaney, *Toward Permissive Appeal in Texas*, 29 ST. MARY'S L.J. 729, 747-49 (1998).

*Exxon Corp. v. Quinn*, 726 S.W.2d 17, 20 (Tex. 1987)."

*Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983)

*Spruiell v. Schlumberger Limited*, 809 S.W.2d 935 (Tex. App. – Texarkana [6th Dist.] 1991)

*Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 733 (Tex. App. – Houston [14th Dist.] 2008, no pet.)

*Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 587 (Tex. App. – Houston [14th Dist.] 2005, no pet.)

*Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 276-77 (Tex. 1996)*

*Science Spectrum v. Martinez, 941 S.W.2d 910 (Tex. 1997)*

*Fort Worth Osteopathic Hosp. Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004)*

*LMB, Ltd. v. Moreno, 201 S.W.3d 686, 687 (Tex. 2006)*

*Walmart Stores v. Rodriguez, 92 S.W.3d 502 (Tex. 2002)*

*Forbes, Inc. v. Granada Biosciences, 124 S.W.3d 167, 172 (Tex. 2003)*

*Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005)*

*Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996)*

*Moore v. Shoreline Ventures, Inc., 903 S.W.2d 900, 902 (Tex. App. – Beaumont 1995, no writ.).*

*Cassingham v. Lutheran Sunburst Health Serv., 748 S.W.2d 589, 590 (Tex. App. – San Antonio 1988, no writ)*

*D. Houston v. Loving, 92 S.W.3d 450(Tex. 2001)*

*Monsanto Co. v. Cornerstones Municipal Utility Dist., 865 S.W.2d 937, 939 (Tex. 1993)*

*Geters v. Eagle Ins. Co.,834 S.W.2d 49, at 50 (Tex. 1992)*

*Hopkins v. Spring Ind. School Dist., 736 S.W.2d 617, at 619 (Tex. 1987)*

*In Redinger v. Living, Inc. 689 S.W.2d 415 (Tex. 1958)*

*Greater Houston Transportation Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990)*

## STATUTES & CODES

Texas Civil Practice & Remedies Code §51.014

Texas Rules of Civil Procedure 168

Tex. Govt. Code §312.002(a)

Tex. Alco. Bev. Code §2.02

Tex. Alco. Bev. Code §2.03

BLACK'S LAW DICTIONARY 357 (6th ed. 1990)

BLACK'S LAW DICTIONARY 386 (6th ed. 1990)

BLACK'S LAW DICTIONARY 707 (6th ed. 1990)

BLACK'S LAW DICTIONARY 984 (6th ed. 1990)

WEBSTER'S NEW WORLD COLLEGE DICTIONARY 357 (4th ed. 2000)

**Appeal No. 08-21-00011-CV**

---

**In the Court of Appeals**
**For the**
**Eighth District of Texas**
**El Paso, Texas**

---

**Vanessa Bolanos, Mayra Bolanos, and Shelia Walton, as Next Friend of Juan Manuel Solis, Decedent**

**v.**

**The Purple Goat, LLC**

---

**<u>Appellant's Brief</u>**

---

TO THE HONORABLE JUSTICES OF THE EIGHTH COURT OF APPEALS:

COMES NOW, Vanessa Bolanos, Mayra Bolanos, Shelia Walton, as Next Friend of Juan Manuel Solis, deceased, Appellant herein, and submit this brief. Appellant will be referred to as "Appellant." Appellee, The Appellee, will be referred to as "Appellee." References to the Clerk's Record will be made as follow: (CR at Pg. #.). References to the Appendix will be made as follows: (Exhibit A)

Appellant would respectfully show the Court as follows:

## STATEMENT OF THE CASE

**Nature of the Case**

The underlying action is a wrongful death case brought by Appellants. (CR. pg. 17) In prior proceedings in the trial court, the Appellants were found to be precluded from bringing tort claims against Appellee and the remaining claim – Dram Shop provided an exclusion for Appellee. (CR. pg. 15).

**Course of Proceedings**

Appellants filed their Original Petition on September 20, 2018. (CR. Pg. 17). Appellants filed their Second Amended Petition on August 7, 2020, to add additional causes of action, negligence per se and negligent hiring, supervision, and retention. Additionally, Appellants claimed wrongful death; negligent hiring, supervision, and retention; premise liability; and added Cynthia Stephens and V.W. Stephens as parties. (CR. Pg. 209).

Appellee filed its Original Answer on August 21, 2020. (CR pg. 24). Appellee filed its Special Exceptions on August 14, 2020. (CR pg. 225). At the conclusion of the Special Exceptions hearing, the trial court sustained the special exceptions and excluded common law theories of liability. (CR pg. 305).

Appellants filed their Findings of Fact and Conclusion of Law, Motion to Reconsider, then their Request for Permissive Appeal. (CR. pg. 307, 322, 373). All of which were denied by the Court. Appellants then filed their notice of appeal.

Appellee filed its Motion for No-Evidence Summary Judgement on September 25, 2020. (CR pg. 341). At the conclusion of the trial court's hearing, the court granted the motion for summary judgment. (CR. pg. 538). Appellee then filed a Motion for No-Evidence Summary Judgment on behalf of Cynthia Stephens and V.W. Stephens on October 23, 2020, and the motion was granted. (CR. pg. 418). Appellant filed Motion to Reconsider on October 6, 2020 and it was denied on October 19, 2020. Appellant filed their Finding of Facts and Conclusion of Law on September 2, 2020 and it was denied on September 3, 2020 (CR. pg. 322). The case was then severed and rendered a final judgment on Defendant V.W. Stephens and Cynthia Stephens. (CR. pg. 556).

**Trial Court Disposition**

The Order on Motion for Summary Judgment was granted on November 20, 2020. (CR. pg. 540). The case was severed on November 30, 2020 and the Order on the Motion for Summary Judgment became final. (CR. pg. 556).

## ISSUES PRESENTED FOR REVIEW

**Issue 1:** Whether the Texas DRAM SHOP exclusion under the Tex. Alco. Bev. Code §2.03 was intended to preclude employees from bringing common law civil claims against employers who sell alcohol?

**Issue 2:** Whether an employee can sue an employer under the Texas Dram Shop Act?

**Issue 3:** Whether the trial court erred in granting Appellee's Motion for Summary Judgment when there was more than scintilla of evidence showing Decedent was served alcohol?

## STATEMENT OF FACTS

It is undisputed that Juan Manuel Solis Bolanos, (herein referred to as "Decedent"), was employed by The Appellee's restaurant business, The Purple Goat, as a dishwasher. Exhibit A. It is also undisputed that Decedent started his shift on or around 5:30 p.m. on August 5, 2017. Exhibit A. The Appellees and their management allowed Decedent to drink at the bar while still on the clock working his shift as a dishwasher. Francisco Soto was a regular patron of the Appellee. Mr. Soto entered The Purple Goat on or around 5:45 p.m. on August 5, 2017. Mr. Soto sat at the bar drinking for a few minutes then asked the bartender, Michael Howard to get Decedent from the kitchen to discuss a gambling debt Decedent owed him. Exhibit A. Mr. Howard walked into the kitchen and informed Decedent that someone at the bar wanted to speak with him. Decedent then sat at the bar with Mr. Soto. The two men started a conversation and Mr. Soto bought Decedent drinks. Decedent continued to sit on the bar and drink with Mr. Soto. During the conversation, the two men became angry, and Mr. Soto hit Decedent in the face causing him to fall backwards off his barstool and hit his head.

An employee of the Appellee called 911 and emergency responders arrived. At the time emergency responders arrived, Decedent was conscious and was taken to Texas Health Harris Methodist Hospital in Stephenville, Texas. Upon arrival at Texas Health Stephenville, Decedent's blood alcohol concentration ("BAC") was .259. Exhibit A. Due to the extent of his brain injury, he was then transferred to Texas Health Harris in Fort Worth. Exhibit A.

No one from the Appellee informed his wife, Shelia Walton, that he was injured or that he was taken to the hospital. Mrs. Walton went to the Appellee on August 6, 2017 to ask where her husband was because he never returned home after his shift. The manager told Mrs. Walton she should "check the hospital."

Decedent stayed in the intensive care unit ("ICU") for three weeks without any signs of improvement. He was then moved to hospice care and died within 24 hours. Decedent died on August 26, 2017 from the injuries he sustained at the Appellee on August 5, 2017. Exhibit A.

## SUMMARY OF THE ARGUMENT

The trial court erroneously granted Appellee's summary judgment because Appellant's claims are not barred by the Dram Shop Act's exclusivity clause which bars common law cause of actions against commercial sellers of alcohol.

## ARGUMENT

### Introduction

Appellants' tort claims arose out of Appellee's overserving alcohol to an employee at Appellee's restaurant establishment. Appellants' Texas Dram Shop claims are permissive as he was an employee of Appellee at the time of the harm. The Dram Shop Act was created to protect individuals from the ramifications of overserving or other alcohol related injuries. Appellee owed a duty to Decedent as his employer. Appellant does not fall within the exclusivity clause because he is an employee of a commercial alcohol seller. In the D. Houston case, the court found that a special relationship exists between the employer and the employee that created a duty and thus tort claims were allowed. D. Houston v. Love, 92 S.W.3d 450 (Tex. 2001).

## Standard of Review

Ordinarily, the order granting summary judgment must expressly dispose of all parties and all issues in the case in order for it to be a final, appealable judgment. See Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 276-77 (Tex. 1996). The order became final, once the case was severed leaving Purple Goat the only party and all its claims disposed of and case stilling proceeding as to the other Defendants. A summary judgment motion appeal will stand or fall on two grounds: 1) the grounds asserted in them motion; and 2) whether the evidence was sufficient to create a fact issue in reference to the grounds. See Science Spectrum v. Martinez, 941 S.W.2d 910 (Tex. 1997). The no-evidence non-movant has the initial burden to present sufficient evidence to warrant a trial. See Fort Worth Osteopathic Hosp. Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004). When a sufficient no-evidence motion is filed and served, the various burdens are split – the burden of production (burden to produce evidence) is placed on the non-movant, however, the burden of persuasion (burden to persuade the court that no genuine issue of facts exists) is on the movant. LMB, Ltd. v. Moreno, 201 S.W.3d 686, 687 (Tex. 2006). A court must review the summary judgment evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. See Walmart Stores v. Rodriguez, 92 S.W.3d 502 (Tex. 2002). If the nonmovant presents more than a scintilla of

evidence to support the challenged ground, the court should deny the motion, See Forbes, Inc. v. Granada Biosciences, 124 S.W.3d 167, 172 (Tex. 2003). The Supreme Court has stated the rule as follow: "in reviewing a summary judgment, we consider all grounds presented to the trial court and preserved on appeal in the interest of judicial economy." Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005). The Supreme Court did not state any different rule depending on the type of summary judgment order being appealed. Id. When a trial court grants a general summary judgment and does not specify the ground on which it granted the judgment, the appellant must argue that every ground of the summary judgment motion is erroneous. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996). An appellant may challenge "not only arguments focusing on whether a genuine issue of material fact was raised but also is allowed to contest non-evidentiary issues such as the legal interpretation of a statute." Moore v. Shoreline Ventures, Inc., 903 S.W.2d 900, 902 (Tex. App. – Beaumont 1995, no writ.). See also Cassingham v. Lutheran Sunburst Health Serv., 748 S.W.2d 589, 590 (Tex. App. – San Antonio 1988, no writ).

**Issue 1: <u>Whether the Texas DRAM SHOP exclusion under the Tex. Alco. Bev. Code §2.03 was intended to preclude employees from bringing common law civil claims against employers who sell alcohol?</u>**

The trial court errored in granting Appellee's summary judgment because Appellant was entitled to recover under both civil tort claims and Dram Shop.

Appellee argued that section 2.03 of the Texas Dram Shop Act exclusivity clause, bars all common law causes of action against commercial sellers of alcohol. Appellant argued that Appellee owed Plaintiff a duty under its employee-employer relationship and the Dram Shop Act was not intended to make Dram Shop the exclusive remedy for employees. In the *D. Houston* case, the court found that a special relationship exists between the employee (an independent contractor) and employer that created a duty and thus tort claims were allowed. 92 S.W.3d 450 (Tex. 2001). *D. Houston* goes on to state, "the Dram Shop Act was clearly intended to pre-empt common law claims against commercial sellers of alcohol for claims that arise from the sellers' provision of alcohol. However, we conclude that it does not bar all common law liability for any conduct by a seller toward its employee or independent contractor whenever alcohol is involved." Id. at 453. The plaintiff's claims in *D. Houston* derived from defendant's alleged failure to use reasonable care in exercising its retained control over its independent contractor's work. Plaintiff ("Love") in D. Houston was an independent contract working as a dancer for defendant Treasures. Id. The court found that even in an independent contractor-employer relationship a duty exists to act reasonably to retain control over its independent contractor. Id. Love did not sue Treasures as "a provider under the Dram

Shop Act. Id. Instead, she [was] suing Treasures as her employer for failing to use reasonable care in exercising retained control over her work as an independent contractor. Treasures encouraged her to drink then allowed her to leave intoxicated. Id. at 454. "Therefore, the Dram Shop Act, which "provides the exclusive cause of action for *providing* an alcoholic beverage to a person 18 years of age or older", does not bar Love's common law claims as an independent contractor against her employer." Id. citing Tex. Alco. Bev. Code §2.03(emphasis added),

Under common law of Texas, employers have a special relationship with their employees and independent contractors that creates a duty on the part of the employers. "An employer may breach a duty to its independent contractor by failing to exercise its retained control over the contractor with reasonable care." *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 20 (Tex. 1987)." When an employer encourages or condones excessive drinking on the job and in fact profits from an employee's drinking, as in this case, the employer ought to be held responsible for foreseeable injuries suffered by the employee because of the resulting intoxication." Id. at 457. Similar to Treasures condoning drinking and even encouraging drinking, Appellee condoned drinking while employees were on the clock. Appellee would profit by its employees tallying a large bar tab that was then deducted from their check. Decedent was visibly drunk as his blood alcohol level, which was tested at the hospital upon arrival, was 0.259. Exhibit A. Defendant Appellee not only allowed Decedent to

continue working while intoxicated but allowed him to continue drinking. Defendant Appellee conceded that Decedent consumed a beer at the bar while speaking with Defendant Soto.  Exhibit A.

Furthermore, *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983), established a duty owed by an employer to an incapacitated employee and that the duty by an employer to an intoxicated employee to whom the employer has served alcoholic beverages does not fall within the Alcoholic Beverage Code. See *Spruiell v. Schlumberger Limited*, 809 S.W.2d 935 (Tex. App. – Texarkana [6th Dist.] 1991). In *Otis*, an employee became intoxicated at work and was sent home. *Otis* at 308. His supervisor escorted him to the parking lot and told him to go home. Id. The supervisor asked if he was alright, he responded he was. Id. The supervisor let him leave and thirty minutes later the employee was involved in an accident killing two people. Id. The employee's blood alcohol level was 0.268. Id. The Supreme Court found that by exerting control over the incapacitated employee, the employer breached a duty to prevent the employee from causing an unreasonable risk of harm to others. Id. at 311. Similar to Otis, Decedent was allowed to drink on the clock and then was sent to speak with an intoxicated patron, who requested to speak to Decedent regarding an owed debt. Exhibit A.

**Issue 2: <u>Whether an employee can sue an employer under the Texas Dram Shop Act?</u>**

The trial court erred in granting Appellee's summary judgment because Appellant is not excluded under the Texas Dram Shop Act, as an employee, from bringing claims against his employer, a commercial seller of alcohol. More specifically, the court erred by telling Appellant that Appellees could have their cake and eat it too. First, the trial court granted Appellee's Special Exceptions stating that Appellant could not sue Appellee under any common law civil tort cause of action because the Texas DRAM SHOP Act exclusion applied. (CR. pg. 305). Subsequently, the trial court granted Appellees Motion for Summary Judgment where Appellees argued that Texas DRAM SHOP did not apply because there was no proof that Appellee served Decedent alcohol. Thus, the trial court found that Texas DRAM SHOP Act did not apply in this case. Appellant questions that if Texas DRAM SHOP Act does not apply in this case then by Appellee's own arguments in their Special Exceptions, the court erred in dismissing all of Appellant's common law civil tort causes of action as the Texas DRAM SHOP Act exclusion would also not be applicable.

Moreover, the trial court erroneously applies the law to represent that commercial alcohol sellers are protected from civil liability against their employees under Texas Dram Shop Act but the case law shows that an employer has an established duty to its employees.

Under the common law of Texas, employers have a special relationship with their employees and independent contractors that creates a duty on the part of the employers. If the employer provides alcoholic beverages to its employees or independent contractors, then breaches its common law duty, the employer's breach is not governed by the Dram Shop Act because the negligent action is the breach of the duty, not the providing of alcoholic beverages. In Redinger v. Living, Inc. 689 S.W.2d 415 (Tex. 1958), the Supreme Court adopted the rule as stated in the Restatement of Torts §414:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care" Additionally the Court following the Comments a and c, " This rule applies when the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master. Restatement (Second) of Torts $ 414, comment a (1965). The employer's role must be more than a general right to order the work to stop or start, to inspect progress or receive reports. Id. at comment c (1965). "He may retain only the

power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others." Id.

Redinger's rule of liability creates a special relationship between employer and independent contractor that imposes a duty upon the employer to control the independent contractor's conduct. Greater Houston Transportation Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).

Even if the case law is unclear, under Texas statutory and common law, the ordinary meaning of the undefined terms "customer," "members," and "guests" in Tex. Alco. Bev. Code §2.03 is to be applied. Tex. Govt. Code §312.002(a); Monsanto Co. v. Cornerstones Municipal Utility Dist., 865 S.W.2d 937, 939 (Tex. 1993)("When the legislature has failed to define a word or term, courts will apply its ordinary meaning."); Geters v. Eagle Ins. Co.,834 S.W.2d 49, at 50 (Tex. 1992) ("In interpreting a statute, however, we give words their ordinary meaning."); Hopkins v. Spring Ind. School Dist., 736 S.W.2d 617, at 619 (Tex. 1987) ("In construing a statute, if the legislature does not define a term, its ordinary

meaning will be applied.").For the common meaning of "customer," Black's Law Dictionary defines the term as: "One who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business ... Ordinarily, one who has had repeated business dealing with another. A buyer, purchaser, consumer, or patron." BLACK'S LAW DICTIONARY 386 (6th ed. 1990). Webster's Dictionary defines "customer" as: "a person who buys, esp. one who buys from, or patronizes, an establishment regularly." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 357 (4th ed. 2000). The language in both these definitions contemplates a person who chooses to go to a tradesman or business regularly to make business purchases, or in the case of a restaurant or nightclub, to purchase food and entertainment services. A person who is at work at the business establishment and is provided alcoholic beverages by the establishment while working is not one who is choosing to regularly patronize the establishment to purchase goods or services, and thus is not a customer by the common definition supplied by Black's and Webster's.

"Member," Black's defines this term as: "One of the persons constituting a family, partnership, association, corporation, guild, court, legislature, or the like." BLACK'S LAW DICTIONARY 984 (6th ed. 1990). Webster's Dictionary defines "member" as "a person belonging to some association, society, community, party,

etc." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 897-98 (4th ed. 2000).

When employees and independent contractors are employed by a commercial seller of alcohol and are in the course and scope of working, they are persons employed by the establishment, not members of it.

Further, Black's defines "guest" as: "a person who is received and entertained at one's home, club, etc., and who is not a regular member." BLACK'S LAW DICTIONARY 707 (6TH ED. 1990). Webster's defines "guest" as: "1 *a*) a person entertained at the home of another; visitor *b*) a person entertained by another acting as host at a restaurant, theater, etc.; 2 any paying customer of a hotel, restaurant, etc.; 3 a nonmember receiving the hospitality of a club, institution, etc." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 631 (4th ed. 2000).

Here, Decedent was employed by Appellee, which Appellee confirmed in its discovery responses. Decedent was allowed to drink on shift without consequence. Appellee was not only aware that Decedent was drunk but allowed him to continue to do so. After Soto struck Decedent he was taken to the hospital, Texas Health Stephenville. At the hospital Decedent's blood was drawn and was at a blood alcohol level of 0.259. Exhibit A. Decedent was visibly drunk yet was still served by the bartender at Appellee. Appellee failed to reasonably exercise control over Decedent thus is negligent – as his employer - separate from its act of serving alcoholic

beverages to an employee or patrons. Appellee created the circumstance to which Decedent was able to physically be harmed. He was drinking on the clock and staff sent him to meet a drunk and/or disgruntled patron. Exhibit A.

As Decedent's employer, Appellee owed Decedent a duty of reasonable care and is liable for physical harm caused to him while under their control. *Otis* further defined the duty to include the duty to prevent the intoxicated employee from causing an unreasonable risk of harm to himself as well as others. *Spruiell* at 940. Appellee provided the alcoholic beverages to the employee; thus, it is Appellee's act of placing the intoxicated employee into circumstances in which he presents a danger to himself or others. Id. An employer who provides alcoholic beverages to an incapacitated employee may be liable for negligence after breaching its Otis duty.

In this case, Decedent was served alcohol by Appellee's bartender who was already visibly drunk. Appellee owed Decedent a duty and breached that duty when it allowed Decedent to drink while on the clock and served him additional alcohol. Even if Decedent was drunk when he showed up to work, he should have been sent home and not allowed to work his shift.

Employees and independent contractors are not named among the class of "customers, members, or guests" who are governed by the Dram Shop Act. Therefore, employers who serve alcoholic beverages to employees or independent

contractors and then breach their common law duty may be liable for negligence. Appellee encourages its employees drink on the clock, thus creating a bar tab that can be deducted out of their paycheck.

The Dram Shop specifies that providers of alcoholic beverages may be liable only for the actions of a narrowly defined class of person – the providers' "customers, members or guests who are or become intoxicated." Tex. Alco. Bev. Code §203. Per its terms, employees and independent contractors are not identified among the class of persons intended to be governed by the Dram Shop Act. Therefore, Appellee, who serves alcoholic beverages to their employees, then breached its duty under the special relationship and is liable. Appellee breached its duty under the special relationship between employer and employee, which is not governed by the Alcoholic Beverage Code or by case law pertaining to serving alcohol.

Employees and independent contractors are not received and entertained at their employer's establishment; they arrive and begin work. The employees or independent contractors may be working as entertainers, but they are entertaining in the course and scope of performing their work; they are not the ones being entertained.

Also, the definition of "customer" is further illuminated in Webster's definition of "guest." Defining a guest as "any paying customer of a hotel, restaurant, etc." contemplates a customer as someone who makes the choice to avail himself of

the services provided by the hotel or restaurant, where he would be considered a guest as opposed to a paying customer at, for instance, a hardware store. But along with these definitions of "customer," "member," and "guest," employees and independent contractors are excluded from the class of persons governed by the Dram Shop Act by one other distinguishing factor. Even if the independent contractor or employee pays for the drinks, an employer who serves alcoholic beverages to an independent contractor or employee is still governed by their special relationship. This special relationship does not exist between a merchant and his customers, members, and guests -- to whom the Dram Shop Act applies. This lack of a special relationship with the provider of the alcoholic beverages specifically separates "customers, members, and guests" from independent contractors and employees in the application of the Dram Shop Act.

Therefore, the definition supplied by petitioner applies only to 16 TAC 50 and does not apply to the Dram Shop Act, and the common definitions of "customer," "member," and "guest" in Black's Law Dictionary and Webster's Dictionary show that employees and independent contractors are not among the class of persons that are governed by the Dram Shop Act. Further, the lack of a special relationship between a merchant and his "customers, members, and guests" distinguishes this class of persons from independent contractors and employees in the application of the Dram Shop Act.

**Issue 3:** **<u>Whether the trial court erred in granting Appellee's Motion for Summary Judgment when there was more than scintilla of evidence showing Decedent was served alcohol?</u>**

The trial court abused its discretion when it erroneously granted Appellee's Motion for Summary Judgment. During the hearing and by and through Appellant's response to Appellee's Motion for Summary Judgment, Appellant showed that there was more than a scintilla of evidence that Decedent was served alcohol at Appellee's establishment. Exhibit A.

Appellee's produced V.W. Stephens statement in its response to Appellant's Production requests stating that, "I was later advised later that Mr. Soto had purchased Manny a beer." Exhibit A. Appellee argued there was not more than a scintilla of evidence, but Appellant showed the court disputing evidence that Appellee did in fact serve Decedent alcohol and that by Appellee's own admission was Decedent served alcohol at the establishment. Exhibit A.

The trial court abused its discretion by granting Appellee's no evidence motion for summary judgment, when evidenced exists to support Appellant's claims. The evidence is more than a scintilla of evidence, which overcomes the no evidence summary judgment.

## PRAYER

Appellant prays this court find that the trial court abused its discretion by granting the motion for summary judgment and reversing the trial court's judgment. The trial court incorrectly applied the Dram Shop Act and Appellant prays this Court reverse the trial court's findings.

_/s/ Ali Crocker Russell_____
Ali Crocker Russell
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 5,266 words, as determined by the computer's software's word counting function, which includes the entire brief for simplicity purposes.

_/s/ Ali Crocker Russell_____
Ali Crocker Russell
Attorney for Appellant

## CERTIFICATE OF SERVICE

I certify that on March 8, 2021, I served a copy of Appellant's Brief on the parties listed below by electronic service and that the electronic transmission was reported as complete. My email address is ali@cralawfirm.com.

David Collley
Fletcher, Farley, Shipman & Salinas, LLP
9201 N. Central Expressway, Ste. 600
Dallas, Texas 75231
Email: David.colley@fletcherfarley.com

_/s/ Ali Crocker Russell_____
Ali Crocker Russell
Attorney for Appellant

**In the Court of Appeals**

**For the**

**Eighth District of Texas**

**El Paso, Texas**

**Vanessa Bolanos, Mayra Bolanos, and Shelia Walton, as Next Friend of Juan Manuel Solis, Decedent**

**v.**

**The Purple Goat, LLC**

**<u>Appellant's Appendix</u>**

**List of Documents**

1. Appellee Production Responses
2. Medical Examiner Report
3. Appellee's Response to Admissions

CHU.24451

CAUSE NO. CV35251

| VANESSA BOLANOS, MAYRA | § | IN THE DISTRICT COURT |
| BOLANOS, AND SHELIA WALTON AS | § | |
| NEXT FRIEND OF JUAN MANUEL | § | |
| SOLIS, DECEDENT, | § | |
| Plaintiffs, | § | ERATH COUNTY, TEXAS |
| | § | |
| VS. | § | |
| | § | |
| THE PURPLE GOAT, LLC and | § | |
| FRANCISCO SOTO, | § | |
| Defendants. | § | 266TH JUDICIAL DISTRICT |

### DEFENDANT THE PURPLE GOAT, LLC'S FIRST
### AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
### FIRST REQUEST FOR PRODUCTION TO DEFENDANT

TO:   Plaintiffs, **VANESSA BOLANOS, MAYRA BOLANOS, AND SHELIA WALTON AS NEXT FRIEND OF JUAN MANUEL SOLIS, DECEDENT**, by and through her attorney of record, Ms. Ali Crocker, Crocker Russell & Associates, 2401 Callender Road, Suite 103, P. O. Box 1671, Mansfield, Texas  76063.

**COMES NOW** The Purple Goat, LLC, a Defendant in the above-entitled and numbered cause (hereinafter "Defendant"), and respectfully serves the following First Amended Objections and Responses to Plaintiffs' First Requests for Production pursuant to Rule 196 of the TEXAS RULES OF CIVIL PROCEDURE.

### AMENDED OBJECTIONS AND RESPONSES
### TO FIRST REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 3:** Any documents relating or referring to any investigation or review conducted by Defendant post incident and prior to this lawsuit regarding the occurrence made the basis of this lawsuit.

**RESPONSE:** Responding party objects to this request on grounds that it is overbroad, vague and ambiguous, unduly burdensome, and not limited in time or scope. Further objection is made to the extent the request seeks information protected by the attorney-client or work product privilege. Without waiving objections, responding party identifies five (5) witness statements prepared on September 8, 2017 and November 10, 2017, by The Purple Goat, LLC employees prepared in response to investigation conducted by the City of Stephenville. The statements are produced as Exhibits "C" through "G."

**DEFENDANT THE PURPLE GOAT, LLC'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION - Page 1**

**REQUEST FOR PRODUCTION NO. 8:** All written statements relating to this case made by any person.

**RESPONSE:** Responding party objects to this request on grounds that it is overbroad, vague and ambiguous, unduly burdensome, and not limited in time or scope. Further objection is made to the extent the request seeks information protected by the attorney-client or work product privilege. Without waiving objections, responding party identifies five (5) witness statements prepared on September 8, 2017 and November 10, 2017, by The Purple Goat, LLC employees prepared in response to investigation conducted by the City of Stephenville. The statements are produced as Exhibits "C" through "G."

**REQUEST FOR PRODUCTION NO. 17:** Please produce copies of any statements and transcripts of any deposition or statement from any witness and employees, agents, and representatives pertaining to this incident taken prior to or after the filing of this suit, including the transcript and exhibits from any deposition taken pursuant to TRCP 202.

**RESPONSE:** Responding party objects to this request on grounds that it is overbroad, vague and ambiguous, unduly burdensome, and not limited in time or scope. Further objection is made to the extent the request seeks information protected by the attorney-client or work product privilege. Without waiving objections, responding party identifies five (5) witness statements prepared on September 8, 2017 and November 10, 2017, by The Purple Goat, LLC employees prepared in response to investigation conducted by the City of Stephenville. The statements are produced as Exhibits "C" through "G."

**REQUEST FOR PRODUCTION NO. 18:** Please provide a true and correct copy of any documents and/or tangible evidence believed by you to support the theory that some act or acts of Defendant caused or contributed to causing the incident made the basis of this lawsuit.

**RESPONSE:** Responding party objects to this request on grounds that it is overbroad, vague and ambiguous, unduly burdensome, and not limited in time or scope. Further objection is made to the extent the request seeks information protected by the attorney-client or work product privilege. Without waiving objections, responding party identifies five (5) witness statements prepared on September 8, 2017 and November 10, 2017, by The Purple Goat, LLC employees prepared in response to investigation conducted by the City of Stephenville. The statements are produced as Exhibits "C" through "G."

**REQUEST FOR PRODUCTION NO. 24:** All witness statements relevant to this case.

**RESPONSE:** Responding party objects to this request on grounds that it is overbroad, vague and ambiguous, unduly burdensome, and not limited in time or scope. Further objection is made to the extent the request seeks information protected by the attorney-client or work product privilege. Without waiving objections, responding party identifies five (5) witness statements prepared on September 8, 2017 and November 10, 2017, by The Purple Goat, LLC employees prepared in response to investigation conducted by the City of Stephenville. The statements are produced as Exhibits "C" through "G."

Respectfully submitted,

**FLETCHER, FARLEY,
SHIPMAN & SALINAS, L.L.P**


/s/Gerardo E. Alcantara
**DOUGLAS D. FLETCHER**
State Bar No. 07139500
Email: doug.fletcher@fletcherfarley.com
**GERARDO E. ALCANTARA**
State Bar No. 24109569
Email: jerry.alcantara@fletcherfarley.com
9201 North Central Expressway, Suite 600
Dallas, Texas 75231
(214) 987-9600
(214) 987-9866 [Fax]

**ATTORNEYS FOR DEFENDANT
THE PURPLE GOAT, LLC**


<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and correct copy of the foregoing instrument has been mailed, telecopied, electronically served or hand delivered to all attorneys of record, in compliance with Rule 21a. of the Texas Rules of Civil Procedure, on this the 15th day of July, 2019.

/s/Gerardo E. Alcantara
**GERARDO E. ALCANTARA**

I was notified on the eight day that the Sheriff Department needed to review our Video footage of the incident. Our system retains the information for seven days. I reviewed the video of the incident on camera myself, but it was not saved.

V.W. Stephens

September 8, 2017

## CAUSE NO. CV35251

| | | |
|---|---|---|
| VANESSA BOLANOS, MAYRA BOLANOS, AND SHELIA WALTON AS NEXT FRIEND OF JUAN MANUEL SOLIS, DECEDENT, | § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | ERATH COUNTY, TEXAS |
| VS. | § § | |
| THE PURPLE GOAT, LLC and FRANCISCO SOTO, | § § § | |
| Defendants. | § | 266TH JUDICIAL DISTRICT |

### DEFENDANT THE PURPLE GOAT, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' THIRD REQUEST FOR PRODUCTION

TO:   Plaintiffs, **VANESSA BOLANOS, MAYRA BOLANOS, AND SHELIA WALTON AS NEXT FRIEND OF JUAN MANUEL SOLIS, DECEDENT**, by and through her attorney of record, Ms. Ali Crocker, Crocker Russell & Associates, 2401 Callender Road, Suite 103, P. O. Box 1671, Mansfield, Texas 76063.

COMES NOW **THE PURPLE GOAT, LLC**, Defendant in the above entitled and numbered cause, and in accordance with Rule 196 of the Texas Rules of Civil Procedure, serves the following Objections and Responses to Plaintiffs' Third Request for Production.

Respectfully submitted,

**FLETCHER, FARLEY,**
**SHIPMAN & SALINAS, L.L.P.**


*/s/ Joseph J. Harrison*
**DOUGLAS D. FLETCHER**
State Bar No. 07139500
Email: doug.fletcher@fletcherfarley.com
**JOSEPH J. HARRISON**
State Bar No. 24083143
Email: joe.harrison@fletcherfarley.com
9201 North Central Expressway, Suite 600
Dallas, Texas 75231
(214) 987-9600
(214) 987-9866 [Fax]

**ATTORNEYS FOR DEFENDANT**
**THE PURPLE GOAT, LLC**


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been mailed, telecopied, electronically served or hand delivered to all attorneys of record, in compliance with Rule 21a. of the Texas Rules of Civil Procedure, on this the 4th day of September, 2020.


*/s/ Joseph J. Harrison*
JOSEPH J. HARRISON

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1.**    Purple Goat's timecard or time management record for Juan Manuel Solis Bolanos for August 5, 2017.

**RESPONSE**: See Bates labeled documents produced by Defendant.

**REQUEST NO. 2.**    A copy of Purple Goat's active employee list as of August 5, 2017.

**RESPONSE**: See Bates labeled documents produced by Defendant.

**REQUEST NO. 3.**    Purple Goat's employee shift schedule for August 5, 2017.

**RESPONSE**: Defendant objects to this request because "employee shift schedule" is vague and ambiguous and fails to identify with specificity a particular category of documents that would be responsive. Subject to and without waiving the foregoing objection, see Bates labeled documents produced by Defendant.

**REQUEST NO. 4.**    A copy of Purple Goat's food and alcohol sales receipts from 3:30 p.m. – 6:30 p.m. on August 5, 2017.

**RESPONSE**: Defendant objects to this request because it is overly broad and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 5.**    A copy of Juan Manuel Solis Bolanos paychecks from January 2017 to August 31, 2017.

**RESPONSE**: See Bates labeled documents produced by Defendant.

**REQUEST NO. 6.**    A copy of Juan Manuel Solis Bolanos's 1099 or W-2 issued by Purple Goat for 2017.

**RESPONSE**: See Bates labeled documents produced by Defendant.

**REQUEST NO. 7.**    A copy of the TABC certification for each active employee who was employed at Purple Goat during 2017.

**RESPONSE**: Defendant objects to this request as overly broad, not properly limited in time or scope, and not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 8.**    A copy of the Food Handlers certificate for each active employee who was employed at Purple Goat during 2017.

**RESPONSE**: Defendant objects to this request as overly broad and not properly limited in time or scope. Defendant also objects to this request because it seeks information that is wholly irrelevant to any issue properly before the court in this action and not in dispute at this time, and it

is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 9.**    A copy of Juan Manuel Solis Bolanos Food Handlers certificate.

**RESPONSE**: Defendant objects to this request because it seeks information that is wholly irrelevant to any issue properly before the court in this action and not in dispute at this time, and it is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 10.**    A copy of the notice of claim Purple Goat submitted to their liquor license insurance carrier regarding the incident between the parties in this suit on August 5, 2017.

**RESPONSE**: See Bates labeled documents produced by Defendant.

**REQUEST NO. 11.**    A copy of the notice of claim Purple Goat submitted to their commercial insurance carrier regarding the incident between the parties in this suit on August 5, 2017.

**RESPONSE**: Defendant objects to this request because it seeks information that is wholly irrelevant to any issue properly before the court in this action and not in dispute at this time, and it is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 12.**    A copy of the report you submitted to TABC regarding the incident between the parties in this suit on August 5, 2017.

**RESPONSE**: Defendant does not have any responsive documents in its possession, custody, or control. If Defendant recieves a copy of the report, Defendant will supplement it.

**REQUEST NO. 13.**    A copy of food and alcohol receipts purchased by Francisco Soto, or another known alias, at Purple Goat from August 5, 2017.

**RESPONSE**: Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST NO. 14.**    A copy of food and alcohol receipts purchased by Juan Manuel Solis Bolanos at Purple Goat from August 5, 2017.

**RESPONSE**: Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST NO. 15.**    A copy of any disciplinary actions filed against Michael Howard.

**RESPONSE**: Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST NO. 16.**    A copy of any disciplinary actions filed against Juan Manuel Solis Bolanos.

**RESPONSE**: Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST NO. 17.**   A copy of the job description for a bartender at the Purple Goat as of August 5, 2017.

**RESPONSE**: See Bates labeled documents produced by Defendant.

**REQUEST NO. 18.**   A copy of the job description for a bus boy at the Purple Goat as of August 5, 2017.

**RESPONSE**: Defendant objects to this request because it seeks information that is wholly irrelevant to any issue properly before the court in this action and not in dispute at this time, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objection, Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST NO. 19.**   A copy of the job description for a dish washer at the Purple Goat as of August 5, 2017.

**RESPONSE**: Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST NO. 20.**   A copy or photograph of any sign or warning that was put up or placed at Purple Goat that waived Purple Goat's liability after August 5, 2020.

**RESPONSE**: Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST NO. 21.**   A copy of any training materials for bartender staff that addresses serving limitations for guests.

**RESPONSE**:  See Bates labeled documents produced by Defendant.

**REQUEST NO. 22.**   A copy of Purple Goat's drink menu as of August 5, 2017.

**RESPONSE**: See Bates labeled documents produced by Defendant.

**REQUEST NO. 23.**   A copy of Purple Goat's drink menu as of August 5, 2020.

**RESPONSE**: Defendant will supplement.

**REQUEST NO. 24.**   A copy of Juan Manuel Solis Bolanos Purple Goat employment application.

**RESPONSE**: Defendant does not have any responsive documents in its possession, custody, or control.



Office of Chief Medical Examiner
Tarrant County Medical Examiner's District
Tarrant County, Texas
200 Feliks Gwozdz Place, Fort Worth, Texas 76104-4919
(817) 920-5700  FAX (817) 920-5713

# Autopsy Report

**CASE NO: 1713400**

**Name:** SOLIS, Juan Manuel  **Age:** 52 years
**Sex:** Male  **Race:** Hispanic
**Date and Time of Death:** August 26, 2017 at 8:50 PM
**Place of Death:** Community Hospice of Texas
1111 Summit Avenue, Fort Worth, TX 76102
**Autopsy Authorized By:** Statute 49.25 of Texas Criminal Code

We the undersigned hereby certify that a full autopsy on the body of **JUAN MANUEL SOLIS** at the Tarrant County Medical Examiner's District Morgue in Fort Worth, Texas on the **28th** day of **August 2017**, beginning at **09:30 AM**, and upon investigation of the essential facts concerning the circumstances of the death and history of the case as known at this time, are of the opinion that the findings, cause and manner of death are as follows

## FINDINGS:

I)  Investigative findings:
- A. Decedent reportedly struck at bar then fell striking his head on 8/5/2017 at approximately 1800 hours
- B. Loss of consciousness reported at the time
- C. Transported to hospital by emergency medical services at 1842 hours
- D. Transferred to second hospital at 2139 hours
- E. Hospital diagnoses of closed head injury with loss of consciousness and laceration to back of head and lip
- F. Transferred to hospice unit on 8/26/2017 at 1935 hours; pronounced in hospice at 2050 hours
- G. Other medical history includes hepatitis C

II)  Exam findings:
- A. Blunt force trauma of head:
  1. Occipital skull fracture
  2. Cerebral contusions
  3. Stapled laceration of the occipital scalp
  4. Scabbed abrasion of the occipital scalp
  5. Status post craniotomy
- B. Moderate coronary artery disease
- C. Hepatic cirrhosis with splenomegaly





|  |
|---|
|     D.  Pulmonary congestion |
| II)    Toxicology:  See attached |

**CAUSE OF DEATH:**    **BLUNT FORCE TRAUMA OF HEAD**

**MANNER OF DEATH:**  HOMICIDE

_____
Signature
    Richard C. Fries, D.O.
    *Deputy Medical Examiner*

_____
Signature
    Nizam Peerwani, M.D.
    *Chief Medical Examiner*

_____
Signature
    Marc A. Krouse, M.D.
    *Chief Deputy Medical Examiner*

_____
Signature
    Susan Roe, M.D.
    *Deputy Medical Examiner*

_____
Signature
    Tasha Z. Greenberg, M.D.
    *Deputy Medical Examiner*

1713400
SOLIS, Juan Manuel

A complete autopsy is carried out at the Tarrant County Medical Examiner's Morgue.

## GROSS ANATOMIC DESCRIPTION

**I.    CLOTHING AND PERSONAL EFFECTS:**   The body is presented to the Morgue in a white body bag, wrapped in a white sheet and clad in a hospital gown and a disposable absorbent undergarment.

**II.    THERAPEUTIC INTERVENTION:**   Evidence of medical intervention includes a Foley catheter with 300 mL of urine in a collection bag, PICC line in the right arm, a craniotomy of the right scalp 12 inches.

**III.    EXTERNAL BODY DESCRIPTION:** The body is that of a normally developed, Hispanic adult male weighing 181.1 pounds, measuring 67 inches in height, and appearing compatible with the stated age of 52 years. The body is cold following refrigeration. Rigor mortis is well developed in the small and large muscles. Livor mortis is mild red, posterior dependent with contact pallor and fixed with pressure. Preservation is good with no decomposition changes. Body hair distribution is that of a normal adult male.

The head demonstrates evidence of traumatic injury and medical therapy (see EVIDENCE OF INJURY and THERAPEUTIC INTERVENTION). The head hair is straight, black and measures up to 3/8 inch. The facial hair consists of a black mustache and beard. The eyes when initially viewed are closed. The corneae are clear. The irides are brown and there is no arcus senilis. The pupils measure 4 mm bilaterally. The conjunctivae are pink. The sclerae are nonicteric. No petechial hemorrhages are identified. The nasal skeleton and septum are intact. The ears are unremarkable. The lips and tongue are atraumatic. The teeth are natural. There is no foreign material in the external auditory canals, external nares or oral cavity.

The neck shows no external evidence of injury. The trachea is midline. The chest is symmetric with normal male breasts. The abdomen is flat with no fluid wave or palpable masses. The external genitalia is that of a normal adult male with an unremarkable penis and descended testes; the perineum and anus are unremarkable. The back and buttocks are symmetric and unremarkable.

The extremities are normally developed and symmetric with no deformities or fractures. The fingernails are intact. The legs show no edema or venous stasis changes. The toenails are unremarkable.

## IV. IDENTIFYING MARKS:

A. Tattoos:
1. Chest tattoos including heart, moon, bird, leaf and woman
2. Abdomen, "SOLIS.J"
3. Back, fist, monster and dragon
4. Right arm, tattoos including bird, flowers, writing, faces and snake
5. Left arm, tattoos including faces, flowers, writing and cross
6. Right dorsal hand, flower
7. Left dorsal hand, cross with writing

No scars or needle tracks are present.

## V. EVIDENCE OF INJURY:

A. BLUNT FORCE TRAUMA OF HEAD:
1. Left occipital skull fracture, 7.6 cm
2. Left cerebellar contusion, 1.7 x 1 cm
3. Inferior frontal contusion, 5 x 4.5 cm
4. Right frontoparietal contusion, 2 x 1.5 cm
5. Right temporal contusion, 4 x 2 cm
6. Status post right-sided craniotomy, 12 inches
7. Status post right-sided craniotomy side of the calvarium, 14.8 x 11.5 cm
8. Scabbed abrasion of the occipital scalp, 1 x ½ inch
9. Stapled laceration of the occipital scalp, 1-⅝ inches

## VI. INTERNAL EXAMINATION

## BODY CAVITIES:

A Y-shaped thoracoabdominal incision is made, the organs are examined in situ and eviscerated in the usual fashion. The subcutaneous fat is moist and yellow. The musculature of the chest and abdominal area is unremarkable.

The chest wall is intact without rib, sternal or clavicular fractures. The serous body cavity membranes are smooth and glistening with no adhesions or effusions.

The pericardium shows a normal amount of serous fluid. The vertebral column shows no scoliosis or kyphosis. The left and right hemidiaphragms are in their normal location and appear grossly unremarkable. The pelvis is intact.

## NECK:

The neck presents an intact hyoid bone as well as thyroid and cricoid cartilages. The larynx is comprised of unremarkable vocal cords and folds, appearing widely patent without foreign material, and is lined by smooth, glistening mucosa. The epiglottis shows no edema, trauma or pathologic lesions. There is no hemorrhage of the anterior musculature of the neck. The vasculature of the anterior neck is unremarkable. The trachea and cervical spine are in the midline presenting no traumatic injuries or pathologic lesions.

## CARDIOVASCULAR SYSTEM:

The heart weighs 474 grams. The left ventricle makes up the entirety of the apex. The endocardium is smooth. The foramen ovale is closed. The myocardium is red-brown without evidence of acute or remote infarction. The free wall of the left ventricle is 1.3 cm in thickness, the interventricular septum 1.3 cm, and the right ventricle 0.3 cm.

The coronary artery ostia are in the normal anatomical location. The coronary arteries show focal moderate atherosclerotic stenosis up to 50% of the left anterior descending. The left circumflex and right coronary arteries are widely patent with minimal atheromatous change. There is a right dominant circulation.

The cardiac valves are unremarkable with the tricuspid, pulmonary, mitral and aortic valves showing thin delicate leaflets with no vegetations or lesions present.

The aorta is unremarkable.

## RESPIRATORY SYSTEM:

The tracheobronchial tree contains no edema fluid, aspirated gastric contents or other foreign material and is lined by smooth, glistening mucosa. The right lung weighs 859 grams and the left 673 grams. The pleural surfaces of the lungs are smooth and glistening with minimal anthracosis. On sectioning, the lungs demonstrate moderate congestion. There are no cysts, abnormal masses or other discrete lesions identified. The pulmonary arterial system is unremarkable without thromboemboli or atherosclerosis.



## GASTROINTESTINAL SYSTEM:

The esophagus is intact lined by smooth glistening mucosa without erosions or varices. The gastroesophageal junction is normal. The stomach shows normal rugal folds without gastritis or ulcers and is empty. The small and large bowel appear grossly unremarkable. The appendix is present and unremarkable.

The pancreas has a yellow lobulated cut surface without hemorrhage, calcification, fat necrosis, pseudocysts or masses.

## HEPATOBILIARY SYSTEM:

The liver weighs 2405 grams and has a nodular surface. On sectioning the hepatic parenchyma is tan-brown, nodular and fibrotic. No dominant masses are identified. The gallbladder is unremarkable containing 50 mL of yellow-green bile and no calculi. The mucosa is green and velvety. The extrahepatic biliary system is patent.

## RETICULOENDOTHELIAL (HEMATOPOIETIC) SYSTEM:

The spleen is enlarged and weighs 486 grams with a gray smooth capsule. On sectioning, the parenchyma is reddish-brown and soft. Examination of the cervical, axillary, mediastinal, abdominal and inguinal lymph nodes reveals no lymphadenopathy. The examined bone marrow is red and firm without lesions. The thymus gland is involuted, appropriate for age.

## GENITOURINARY SYSTEM:

The right and left kidneys weigh 266 grams and 252 grams, respectively. The capsules strip with ease and the cortical surfaces are smooth. On sectioning the cortex is of normal thickness, with a well-defined corticomedullary junction and unremarkable medullae. The pelves and calyces are of normal size and lined by gray glistening mucosa. There are no calculi. The ureters are of normal caliber in the retroperitoneum. The renal arteries and veins are normal.

The urinary bladder is unremarkable containing no urine.

The prostate gland and seminal vesicles are unremarkable. The testes are not removed.



## ENDOCRINE SYSTEM:

The thyroid gland is of normal size and shape with a red-brown cut-surface and no lesions. Parathyroid glands are not identified. The adrenal glands have yellow cortices of normal thickness and the medullae show no lesions or hemorrhage. The pituitary gland is of normal size with no gross pathologic lesions.

## HEAD AND CENTRAL NERVOUS SYSTEM:

A scalp incision, craniotomy, and removal of the brain are performed in the usual fashion. There is evidence of traumatic injury and medical therapy of the head including the skull and brain (see THERAPEUTIC INTERVENTION and EVIDENCE OF INJURY).

The brain weighs 1475 grams. Serial sections demonstrate no evidence of underlying natural disease.

VII.   **IDENTIFICATION:** The decedent is identified by fingerprints.

## SPECIMENS AND EVIDENCE COLLECTED

1.   11 mL subclavian blood, 14 mL aortic blood, 14 mL urine and 7 mL of vitreous for toxicology
2.   Representative tissue sections in formalin
3.   Fingerprints and palmprints
4.   Forensic evidence:
     a. Blood card
     b. Scalp hair
     c. Facial hair
     d. Pubic hair
5.   Representative photographs

EDC: 11/28/17
Dictated: 8/28/17
Transcribed: 9/8/17
Completed: 11/15/17
RCF:bb

# Forensic Toxicology Results



Office of Chief Medical Examiner
Toxicology Laboratory Service
200 Feliks Gwozdz Place
Fort Worth, Texas 76104
Name: **Juan Manuel Solis**

Case Number: **1713400**
Toxicology Work Number: **1702848**

Nizam Peerwani, M.D., DABFP
Chief Medical Examiner
Robert Johnson, PH.D., DABFT
Chief Toxicologist

Service Request Number: **002**

| Specimen | Drug | Result | Drug Amount | Instrument Used | Performed By |
|---|---|---|---|---|---|
| Subclavian Blood | Ethanol | NEGATIVE | | GC/FID | K. SCOTT |
| URINE | Amphetamine ELISA | NEGATIVE | | ELISA | B. LANDRY |
| URINE | Methamphetamine ELISA | NEGATIVE | | ELISA | B. LANDRY |
| URINE | THC ELISA | NEGATIVE | | ELISA | B. LANDRY |
| URINE | Opiate ELISA | POSITIVE | | ELISA | B. LANDRY |
| URINE | Cocaine ELISA | NEGATIVE | | ELISA | B. LANDRY |
| URINE | Benzodiazepine ELISA | POSITIVE | | ELISA | B. LANDRY |
| URINE | Oxycodone ELISA | NEGATIVE | | ELISA | B. LANDRY |
| URINE | Fentanyl ELISA | NEGATIVE | | ELISA | B. LANDRY |
| URINE | ACID | NEGATIVE | | GCMS | C. LEWIS |
| Subclavian Blood | MORPHINE | POSITIVE | 174 ng/mL | LCMS | C. WHEELER |
| URINE | MORPHINE | POSITIVE | | LCMS | C. WHEELER |
| Subclavian Blood | NORDIAZEPAM | POSITIVE | 92 ng/mL | LCMS | C. WHEELER |
| URINE | NORDIAZEPAM | POSITIVE | | LCMS | C. WHEELER |

Approved By: _____

Approved Date: 9/20/17

# TARRANT COUNTY MEDICAL EXAMINER'S DISTRICT
## SERVING TARRANT, PARKER, JOHNSON & DENTON COUNTIES
### Investigator's Report

CASE #: 1713400     Tarrant     TYPE: Jurisdiction     IDENTITY: Identified

NIZAM PEERWANI, M.D.                 MICHAEL FLOYD
CHIEF MEDICAL EXAMINER     CHIEF FORENSIC DEATH INVESTIGATOR

DECEASED: Juan Manuel Solis
ADDRESS: 113 Tracy St., Stephenville, Texas 76401

| | | |
|---|---|---|
| AGE: 52 | BIRTH DATE: 2/16/1965 | MARITAL STATUS: Married |
| PHONE: | RACE OR COLOR: Hispanic | SEX: M |
| HEIGHT: 5' 7" | WEIGHT: 181.1 lb. | |
| SSN: | MANNER OF DRESS: | |

OCCUPATION:
PLACE OF EMPLOYMENT:

DATE OF DEATH: 8/26/2017        TIME OF DEATH: 20:50
PLACE OF DEATH DESCRIPTION: Hospice Inpatient Unit
ADDRESS OF DEATH: 1111 Summit Ave., Fort Worth, Texas 76102
HOSPITALIZED: Yes
ADMIT DATE: 8/5/2017        ADMIT TIME: 21:39
ENVIRONMENT CONDITION: controlled
CHARACTERISTIC OF PREMISES: indoors

DATE/TIME M.E. NOTIFIED: 8/26/2017 21:15
ARRIVED:
REPORTING PERSON: Kerri Thomas, R.N.
REPORTING AGENCY: Community Hospice
ADDRESS: 1111 Summit Ave., Fort Worth, Texas 76102
PHONE: (817)870-9995
PRONOUNCED DEAD BY: Kerri Thomas, R.N.
PRONOUNCING AGENCY: Community Hospice of Texas
LAST TREATED BY:

DATE/TIME OF OCCURRENCE: 8/5/2017 23:00
INJURY AT WORK: N0
PLACE OF OCCURRENCE: Sports Bar
LOCATION: 2025 E. Washington St., Stephenville, Texas 76401
TRAUMA RELATED: Yes

WITNESSED BY: Donald Smith
IDENTIFICATION TYPE: Visual
DATE/TIME OF IDENTIFICATION: 8/26/2017 -Time: 19:35
IDENTIFIED BY:
IDENTIFICATION STATUS: Positive ID
ADDRESS:
PHONE:
COMMENTS:

.........................................................................................

WITNESSED BY: ShaVonda Jones
IDENTIFICATION TYPE: Fingerprint
DATE/TIME OF IDENTIFICATION: 8/28/2017 -Time: 13:05
IDENTIFIED BY:
IDENTIFICATION STATUS: Positive ID
ADDRESS:
PHONE:
COMMENTS: Postmortem inked fingerprints collected from the remains. Antemortem fingerprints

# TARRANT COUNTY MEDICAL EXAMINER'S DISTRICT
## SERVING TARRANT, PARKER, JOHNSON & DENTON COUNTIES
### Investigator's Report

CASE #: 1713400          Tarrant          TYPE: Jurisdiction          IDENTITY: Identified

NIZAM PEERWANI, M.D.                                         MICHAEL FLOYD
CHIEF MEDICAL EXAMINER                    CHIEF FORENSIC DEATH INVESTIGATOR

obtained from the TXDPS based on the tentative identity. Subsequent comparisons resulted in the identification of the remains as: Juan Manuel Solis, H/M,02/16/1965.

NEXT OF KIN NOTIFICATION DATE/TIME: 8/26/2017 20:50
NOTIFIED BY: Kerri Thomas, R.N.
NOTIFYING AGENCY: Community Hospice
NEXT OF KIN NAME:
RELATIONSHIP:
COMMENTS:
ADDRESS:
PHONE:
BODY TO: TCME                          CONVEYANCE: Accucare
FUNERAL HOME: TBD

NAME OF RELEASING AUTHORITY:

RELATIONSHIP:

DISPOSITION OF PROPERTY:

MEDICAL INVESTIGATOR:
 Donald Smith

## CAUSE NO. CV35251

| | | |
|---|---|---|
| VANESSA BOLANOS, MAYRA BOLANOS, AND SHELIA WALTON AS NEXT FRIEND OF JUAN MANUEL SOLIS, DECEDENT, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiffs, | §<br>§ | ERATH COUNTY, TEXAS |
| VS. | §<br>§ | |
| THE PURPLE GOAT, LLC and FRANCISCO SOTO, | §<br>§<br>§ | |
| Defendants. | § | 266TH JUDICIAL DISTRICT |

### DEFENDANT THE PURPLE GOAT, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS

TO:    Plaintiffs, **VANESSA BOLANOS, MAYRA BOLANOS, AND SHELIA WALTON AS NEXT FRIEND OF JUAN MANUEL SOLIS, DECEDENT**, by and through her attorney of record, Ms. Ali Crocker, Crocker Russell & Associates, 2401 Callender Road, Suite 103, P. O. Box 1671, Mansfield, Texas 76063.

COMES NOW **THE PURPLE GOAT, LLC**, Defendant in the above entitled and numbered cause, and in accordance with Rule 198 of the Texas Rules of Civil Procedure, serves the following Responses to Plaintiff's First Request for Admissions.

Respectfully submitted,

**FLETCHER, FARLEY,
SHIPMAN & SALINAS, L.L.P.**


*/s/ Douglas D. Fletcher*
**DOUGLAS D. FLETCHER**
State Bar No. 07139500
Email: doug.fletcher@fletcherfarley.com
**JOSEPH J. HARRISON**
State Bar No. 24083143
Email: joe.harrison@fletcherfarley.com
9201 North Central Expressway, Suite 600
Dallas, Texas 75231
(214) 987-9600
(214) 987-9866 [Fax]

**ATTORNEYS FOR DEFENDANT
THE PURPLE GOAT, LLC**


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been mailed, telecopied, electronically served or hand delivered to all attorneys of record, in compliance with Rule 21a. of the Texas Rules of Civil Procedure, on this the 21st day of August, 2020.


*/s/ Douglas D. Fletcher*
**Douglas D. Fletcher**

## REQUESTS FOR ADMISSIONS

**REQUEST NO. 1.**    Admit or deny on August 5, 2017 Juan Manuel Solis Bolanos was employed by Purple Goat.

      **RESPONSE**:  Admitted.

**REQUEST NO. 2.**    Admit or deny on August 5, 2017 at 5:00 p.m., Juan Manuel Solis Bolanos was working his shift at the Purple Goat.

      **RESPONSE**:  Admitted.

**REQUEST NO. 3.**    Admit or deny that Purple Goat employs undocumented workers.

      **RESPONSE**: Defendant objects to Request for Admission No. 3. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 4.**    Admit or deny Purple Goat has received one or more citations for violating Texas Alcoholic Beverage Commission policies.

      **RESPONSE**:  Admitted.

**REQUEST NO. 5.**    Admit or deny that Purple Goat does not deduct taxes from all its employees pay checks.

      **RESPONSE**: Defendant objects to Request for Admission No. 5. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 6.**    Admit or deny Michael Howard was working as a bartender the day of the incident, August 5, 2017.

      **RESPONSE**:  Admitted.

**REQUEST NO. 7.**    Admit or deny Purple Goat knew or had knowledge that Juan Manuel Solis Bolanos was an illegal resident when he was hired.

      **RESPONSE**: Defendant objects to Request for Admission No. 7. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 8.**    Admit or deny Purple Goat paid Juan Manuel Solis Bolanos in cash.

**RESPONSE**: Defendant objects to Request for Admission No. 8. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 9.**     Admit or deny on August 5, 2017 Juan Manuel Solis Bolanos was working at the Purple Goat as a bus boy.

**RESPONSE**:  Denied.

**REQUEST NO. 10.**   Admit or deny on August 5, 2017 Juan Manuel Solis Bolanos was working as a dish washer.

**RESPONSE**:  Admitted.

**REQUEST NO. 11.**   Admit or deny on August 5, 2017 Juan Manuel Solis Bolanos was working at the Purple Goat on the clock when the incident occurred.

**RESPONSE**:  Defendant objects to Request for Admission No. 11 on the grounds that the term "on the clock" as used in this Request is not defined.  Defendant has admitted in Request Request for Admission No. 10 that Juan Manuel Solis Bolanos was working as a dishwasher on the day of the incident.

**REQUEST NO. 12.**   Admit or deny Purple Goat did not withhold taxes on Juan Manuel Solis Bolanos pay.

**RESPONSE**: Defendant objects to Request for Admission No. 12. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 13.**   Admit or deny Purple Goat did not issue a 1099 to Juan Manuel Solis Bolanos.

**RESPONSE**: Defendant objects to Request for Admission No. 13 on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 14.**   Admit or deny Purple Goat did not issue a W-2 to Juan Manuel Solis Bolanos.

**RESPONSE**: Defendant objects to Request for Admission No. 14 on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 15.**   Admit or deny Purple Goat paid Juan Manuel Solis Bolanos hourly.

**RESPONSE**: Defendant objects to Request for Admission No. 15 on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 16.**  Admit or deny Purple Goat paid Juan Manuel Solis Bolanos $7.25 an hour.

**RESPONSE**: Defendant objects to Request for Admission No. 16 on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 17.**  Admit or deny Juan Manuel Solis Bolanos clocked in at 5:00 p.m. for his shift of August 5, 2017.

**RESPONSE**:  Defendant objects to Request for Admission No. 17 on the grounds that the term "clocked in" as used in this Request is not defined.  Defendant has admitted in Request for Admission No. 10 that Juan Manuel Solis Bolanos was working as a dishwasher on the day of the incident.

**REQUEST NO. 18.**  Admit or deny Juan Manuel Solis Bolanos clocked in at 4:00 p.m. for his shift of August 5, 2017.

**RESPONSE**:  Defendant objects to Request for Admission No. 18 on the grounds that the term "clocked in" as used in this Request is not defined.  Defendant has admitted in Request for Admission No. 10 that Juan Manuel Solis Bolanos was working as a dishwasher on the day of the incident.

**REQUEST NO. 19.**  Admit or deny Juan Manuel Solis Bolanos never received any disciplinary actions from Purple Goat.

**RESPONSE**:  Defendant objects to Request for Admission for Admission No. 19. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 20.**  Admit or deny Purple Goat has a system to track their employee's work hours.

**RESPONSE**: Defendant objects to Request for Admission No. 20. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 21.**  Admit or deny Purple Goat has a system that keeps their employee's work schedules.

**RESPONSE**: Defendant objects to Request for Admission No. 21. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 22.** Admit or deny that Purple Goat does not require its employees to wear non-slip shoes.

**RESPONSE**: Defendant objects to Request for Admission No. 22. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 23.** Admit or deny Purple Goat does not conduct background check on its employees.

**RESPONSE**: Defendant objects to Request for Admission No. 23. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 24.** Admit deny Purple Goat requires all employees to be TABC certified.

**RESPONSE**: Denied.

**REQUEST NO. 25.** Admit or deny Michael Howard was TABC certified on August 5, 2017.

**RESPONSE**: Admitted.

**REQUEST NO. 26.** Admit or deny Michael Howard has one or more citations against his TABC certification as of August 31, 2017.

**RESPONSE**: Admitted.

**REQUEST NO. 27.** Admit or deny Purple Goat informed TABC of the incident on August 5, 2017.

**RESPONSE**: Defendant objects to Request for Admission No. 27. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 28.** Admit or deny Michael Howard is currently employed by the Purple Goat.

**RESPONSE**: Denied.

**REQUEST NO. 29.** Admit or deny Juan Manuel Solis Bolanos had valid food handler license as of August 5, 2017.

**RESPONSE**: Defendant objects to Request for Admission No. 29. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 30.** Admit or deny that Juan Manuel Solis Bolanos had a valid TABC certification as of August 5, 2017.

**RESPONSE**: Denied.

**REQUEST NO. 31.** Admit or deny Francisco Soto consumed multiple alcoholic beverages at the Purple Goat on August 5, 2107.

**RESPONSE**: Denied.

**REQUEST NO. 32.** Admit or deny that Francisco Soto was a frequent customer of the Purple Goat as of August 5, 2017.

**RESPONSE**: Defendant admits that Francisco Soto has been a customer at The Purple Goat on at least one occasion prior to the incident basis of suit on August 5, 2017.

**REQUEST NO. 33.** Admit or deny Juan Manuel Solis Bolanos consumed alcohol while still on the clock.

**RESPONSE**: Defendant objects to Request for Admission No. 33 on the grounds that the term "on the clock" as used in this Request is not defined. Subject to that objection and based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 33, and therefore would deny same.

**REQUEST NO. 34.** Admit or deny that more than one bartender was working on August 5, 2017 at 6:00 p.m.

**RESPONSE**: Admitted.

**REQUEST NO. 35.** Admit or deny Michael Howard served Bolanos alcohol.

**RESPONSE**: Denied.

**REQUEST NO. 36.** Admit or deny Francisco Soto represented to Michael Howard was at the Purple Goat on August 5, 2017 to collect a debt from Juan Manuel Solis Bolanos.

**RESPONSE**: Defendant objects to Request for Admission No. 36. on the grounds that the request is unintelligible, therefore Defendant denies same.

**REQUEST NO. 37.** Admit or deny Francisco Soto asked Michael Howard to get Juan Manuel Solis Bolanos from the kitchen on August 5, 2017.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request No. 37, and therefore would deny same.

**REQUEST NO. 38.** Admit or deny that Michael Howard went to get Juan Manuel Solis Bolanos from the kitchen to meet with Francisco Soto on August 5, 2017.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 37, and therefore would deny same.

**REQUEST NO. 39.** Admit or deny that Purple Goat had security cameras on the premises on August 5, 2017.

**RESPONSE**: Admitted.

**REQUEST NO. 40.** Admit or deny Purple Goat had cameras inside the building on August 5, 2017.

**RESPONSE**: Admitted.

**REQUEST NO. 41.** Admit or deny Purple Goat had cameras on the outside of the building on August 5, 2017.

**RESPONSE**: Admitted.

**REQUEST NO. 42.** Admit or deny that Purple Goat's security camaras [sic] were working on August 5, 2017.

**RESPONSE**: Admitted.

**REQUEST NO. 43.** Admit or deny Purple Goat records its security camara [sic] footage.

**RESPONSE**: Admitted

**REQUEST NO. 44.** Admit or deny Purple Goat had footage of the incident on August 5, 2017.

**RESPONSE**: Defendant admits it had footage of the incident for seven days after August 5, 2017 per its camera footage retention policy.

**REQUEST NO. 45.** Admit or deny the security camera recording of the incident was not preserved.

**RESPONSE**: Admitted.

**REQUEST NO. 46.** Admit or deny Purple goat was contacted by local police on August 5, 2017 regarding the incident.

**RESPONSE**: Defendant would admit that members of the local law enforcement organization came to the premises on August 5, 2017.

**REQUEST NO. 47.** Admit or deny one or more customers heard the incident.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request No. 47, and therefore would deny same.

**REQUEST NO. 48.** Admit or deny one or more customers saw the incident.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 48, and therefore would deny same.

**REQUEST NO. 49.** Admit or deny one or more employees of the Purple goat heard the incident.

**RESPONSE**: Admitted.

**REQUEST NO. 50.** Admit or deny one or more employees of the Purple goat saw the incident.

**RESPONSE**: Admitted.

**REQUEST NO. 51.** Admit or deny one or more employees of the Purple goat saw Juan Manuel Solis Bolanos consume alcohol on August 5, 2017 while he was working.

**RESPONSE**: Denied.

**REQUEST NO. 52.** Admit or deny one or more employees of the Purple goat had knowledge that Juan Manuel Solis Bolanos consumed alcohol on August 5, 2017 while he was working.

**RESPONSE**: Denied.

**REQUEST NO. 53.** Admit or deny Haylie Adams called 911 on August 5, 2017.

**RESPONSE**: Admitted.

**REQUEST NO. 54.** Admit or deny the police department came to the Purple Goat on August 5, 2017.

**RESPONSE**: Defendant admits that members of the local law enforcement organization came to The Purple Goat on August 5, 2017, the date of the incident basis of suit.

**REQUEST NO. 55.** Admit or deny there have been other altercations between a customer and an employee.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 55, and therefore would deny same.

**REQUEST NO. 56.** Admit or deny that there have been previous altercations between a customer and another customer at the Purple Goat.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 56, and therefore would deny same.

**REQUEST NO. 57.** Admit or deny that there have been previous alterations between a customer and an employee at the Purple Goat.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 57, and therefore would deny same.

**REQUEST NO. 58.** Admit or deny after the incident on August 5, 2017 Purple Goat placed signs stating Purple Goat was not liable for injuries on its premises.

**RESPONSE**: Defendant objects to Request for Admission No. 58. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 59.** Admit or deny you were aware Juan Manuel Solis Bolanos was married to Sheila Walton.

**RESPONSE**: Denied.

**REQUEST NO. 60.** Admit or deny Purple Goat did not notify Sheila Walton that Juan Manuel Solis Bolanos was taken to the hospital.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 60, and therefore would deny same.

**REQUEST NO. 61.** Admit or deny that no representative of the Purple Goat called Sheila Walton after the incident on August 5, 2017.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 61, and therefore would deny same.

**REQUEST NO. 62.** Admit or deny Sheila Walton came to Purple Goat on August 6, 2017.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 62, and therefore would deny same.

**REQUEST NO. 63.**  Admit or deny Sheila Walton asked employees of Purple Goat where her husband was on August 6, 2017.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 63, and therefore would deny same.

**REQUEST NO. 64.**  Admit or deny as of August 5, 2017, Purple Goat had a valid and up to date commercial insurance policy.

**RESPONSE**: Defendant would object to Request for Admission No. 64. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 65.**  Admit or deny on August 5, 2017 Purple Goat's had a valid and up to date liquor insurance policy.

**RESPONSE**: Defendant objects to Request for Admission No. 65. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 66.**  Admit or deny you sent the Original Petition to the commercial insurance carrier.

**RESPONSE**: Defendant objects to Request for Admission No. 66. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 67.**  Admit or deny you sent the Original Petition to the liquor liability carrier.

**RESPONSE**: Defendant objects to Request for Admission No. 67. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 68.**  Admit or deny you sent the Amended Petition to the commercial insurance carrier.

**RESPONSE**: Defendant objects to Request for Admission No. 68. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 69.**  Admit or deny you sent the Amended Petition to the liquor liability carrier.

**RESPONSE**: Defendant objects to Request for Admission No. 69. on the grounds of relevancy insofar as said Request for Admission is not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 70.** Admit or deny that Francisco Soto has not been indicted for charges arising out of the incident that occurred between him and Juan Manuel Solis Bolanos.

**RESPONSE**: At this time, based upon Defendant's reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable it to either admit or deny Request for Admission No. 70, and therefore would deny same.

**REQUEST NO. 71.** Admit or deny that the Purple Goat gave witness statements to the Stevensville Police regarding the incident that occurred on August 5, 2017.

**RESPONSE**: Defendant admits that it has cooperated with the appropriate law enforcement organization regarding said organization's investigation of the incident.

**REQUEST NO. 72.** Admit or deny that the Purple Goat did not have or employed private security workers as of August 5, 2017.

**RESPONSE**: Denied.

**REQUEST NO. 73.** Admit or deny that the Purple Goat is a subsidiary of another company.

**RESPONSE**: Denied.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Micala Munoz on behalf of Ali Crocker
Bar No. 24098868
micala@cralawfirm.com
Envelope ID: 51380495
Status as of 3/11/2021 4:03 PM MST

Associated Case Party: The Purple Goat, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David C. Colley | 4583600 | david.colley@fletcherfarley.com | 3/11/2021 10:44:37 AM | SENT |
| Douglas DFletcher | | sheila.landua@fletcherfarley.com | 3/11/2021 10:44:37 AM | SENT |
| Joe J.Harrison | | joe.harrison@fletcherfarley.com | 3/11/2021 10:44:37 AM | SENT |
| Rosa Lavin | | rosa.lavin@fletcherfarley.com | 3/11/2021 10:44:37 AM | SENT |

Associated Case Party: Vaness Bolanos

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Micala Munoz | | micala@cralawfirm.com | 3/11/2021 10:44:37 AM | SENT |
| Ali Crocker | | ali@cralawfirm.com | 3/11/2021 10:44:37 AM | SENT |
| Kursten King | | kursten@cralawfirm.com | 3/11/2021 10:44:37 AM | SENT |